UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:18-cv-61469-BB

TRITON II, LLC

    Plaintiff,

v.

JOHN RANDAZZO and CAPRICE TURNER,

    Defendants.

_____

**Plaintiff's Motion to Lift Stay to Commence
Limited Discovery and Supporting Memorandum of Law**

**Preliminary Statement**

Plaintiff Triton, II, LLC ("Triton") moves to partially lift the stay on all discovery entered on August 14, 2018, because there are two specific issues on which "particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party," as contemplated under 15 U.S.C. § 78u–4(b)(3)(B).

The *first* limited issue for which particularized discovery is essential is the validity of a purported Operating Agreement for Comprehensive Virtual Healthcare, LLC ("CVH Florida") and Irrevocable Proxy ("Proxy"). Triton contends these documents are fake. *See* Operating Agreement and Proxy, attached as **Exhibits A and B**, respectively. Discovery at this juncture on this issue is critical because:  (1) it supports Triton's claims that it was defrauded and its monies were misappropriated by the Defendants, and (2) it undercuts Defendants' sole reliance on these documents to defend their misconduct.

In particular, Defendants assert these documents were executed by Triton's principal, Krishna Lawrence. Yet, Lawrence has no recollection of ever seeing these documents prior to Caprice Turner providing copies of these documents in June of 2018. Triton's Office Manager keeps meticulous records of every document Lawrence signs, and has no record of either of these documents. Finally, Lawrence's counsel has no record of any executed operating agreement or proxy document. In June of 2018, Turner provided unsigned final versions of these documents in Word format and alleged executed versions in .pdf format.  The executed version of the Operating

1

Agreement materially differs from the unsigned Word version in at least eight ways, and the alleged executed Proxy pdf version also materially differs from its unsigned Word version.  As such, Triton seeks to inspect the alleged original executed versions of the documents and obtain copies of the electronic versions along with the accompanying metadata and correspondence concerning these documents. Triton expects this discovery will show Lawrence never signed either of these documents and his signature was forged or fraudulently superimposed by the Defendants.

The *second* limited issue for which discovery is essential is the tracing of Triton's funds. The discovery here is limited to bank records and tax filings. As alleged in the Complaint, by the end of September, 2016, of Triton's original $2,963,133.44 wired to CVH Florida's bank account, less than $50,000.00 remained. Triton alleges Randazzo deceived Triton into transferring this amount by representing the monies would be used to invest in an alleged healthcare business that never actually existed and that Defendants ultimately misappropriated Triton's funds. Banking records will identify what Defendants' actually used Triton's monies for and whether any such use had a legitimate business purpose. Tax filings, or frankly, the lack thereof, over a multiple year period, goes directly to the issue of whether CVH Florida was a sham entity used by the Defendants to defraud Triton.

## Factual Background

Plaintiff brought a federal action alleging violations of section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Plaintiff also asserts state common law claims for fraudulent misrepresentation, conversion, civil conspiracy, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment and negligent misrepresentation.

The Complaint alleges the following in support of the above claims:  In the summer of 2015, Randazzo made a series of material misrepresentations and omissions to Triton to induce it to transfer $2,963,133.44 under the auspices that it would be used to acquire a (30%) interest in CVH Florida, an entity which Randazzo represented was an operating virtual healthcare business. Once Triton transferred such funds, Randazzo and co-defendant Caprice Turner ("Turner") siphoned off nearly all these monies.  Whether the use of any of these monies has a legitimate business purpose remains to be seen.  As set forth in the Complaint, in June of 2018, Defendants gave a description of what Triton's monies were actually used for that materially differs from the representations made three years before.

Triton's principal, Krishna Lawrence, executed a declaration, which is attached as **Exhibit**

2

**C**. As set forth in that declaration, Lawrence has no recollection of ever signing the purported Operating Agreement or the purported Proxy, which Turner provided in June of 2018 prior to the filing of this lawsuit. **Exhibit C** at ¶ 7. Lawrence keeps meticulous records of all documentation of any business transaction (including those of Triton) and has no copies or record of these documents or the exhibit attached to the Operating Agreement. *Id.*

Kelly Baker is the Officer Manager for Triton and has also executed a declaration. *See* Baker Declaration attached as **Exhibit D**. She attests to the following:  She keeps hard copies of every document that Lawrence ever signs, and she never deletes any email relating to any business transaction in any way. **Exhibit D** at ¶3. She has no recollection of Triton or Krishna Lawrence ever signing the purported Operating Agreement or the purported Proxy. *Id.* at ¶ 6.  If Lawrence ever signed the purported Operating Agreement or the purported Proxy, she would have a hard copy of each signed document.  *Id.* at ¶ 4.  She keeps meticulous records of all documentation of any business transaction, and has checked all records maintained for Lawrence and Triton, and searched through all of the available emails concerning CVH Florida. *Id.* at ¶¶ 4–5. She does not have any copies or record of these documents or the exhibit attached to the Operating Agreement. *Id.* at ¶5.

Finally, attorney Lawrence M. Ploucha represented Lawrence and Triton in connection with Triton's planned investment into CVH NC, the predecessor business originally pitched by Randazzo to Lawrence, and has signed an affidavit, as well. *See* Ploucha affidavit, attached as **Exhibit E**.  He does not have in his possession any copies of the alleged executed operating agreement or irrevocable proxy for CVH Florida.  Ploucha Aff. ¶ 4.

### Memorandum of Law

I.    **Legal Standards for Motion to Stay Under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA").**

Title 15 U.S.C. § 78u–4(b)(3)(B) provides:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

The purpose of the PSLRA is to restrict abuses in securities class action litigation such as:  "(1) the practice of filing lawsuits against issuers of securities in response to any significant change in

3

stock price, regardless of defendants' culpability; (2) the targeting of 'deep pocket' defendants: (3) the abuse of the discovery process to coerce settlement; and (4) manipulation of clients by class action attorneys." *Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162, 165 (S.D.N.Y. 2001) (quoting *In re Advanta Corp. Secs. Litig.*, 180 F.3d 525, 530-31 (3d Cir. 1999); other internal cites omitted). This is not such a case.

## II.     The Exceptions Expressly Provided By 15 U.S.C. § 78u–4(B)(3)(B) Are Present In This Case.

There is a sufficient showing of need to permit Triton's requested discovery as to the Defendants and non-parties. The discovery it requests is limited and particularized in scope, and it is necessary both to preserve evidence and to prevent undue prejudice to Triton. None of the prescribed abuses under the PSLRA legitimizing a stay in discovery are present in this case. Triton is not attempting to use discovery as a "fishing expedition" to find a sustainable claim not alleged in its Complaint. There is no coercive aspect to Triton's discovery demands. Finally, this is not a frivolous lawsuit designed to extort money from defendants who would rather settle than pay exorbitant discovery costs. The discovery here is limited in scope and the costs to comply are minimal.

### A.     Triton's Proposed Discovery is Particularized.

A discovery request is "particularized" within the meaning of 15 U.S.C. § 78u-4(b)(3)(B) if the "party seeking discovery under the exception . . . adequately specif[ies] the target of the requested discovery." *In Re Lernout & Hauspie Sec. Litig.,* 214 F.Supp. 2d 100, 108 (D. Mass. 2002). Whether a discovery request is sufficiently "particularized" depends on "the nature of the underlying litigation." *In re Royal Ahold*, 220 F.R.D. 246, 250 (D. Md. 2004). Particularized discovery describes a "clearly defined universe of documents," *Id.* (internal citations omitted).

Here, the discovery sought by Triton is specific to the limited issues of (1) whether the purported executed Operating Agreement and Proxy are genuine or fraudulent; (2) the legitimacy of CVH Florida and (3) tracing the actual use of Triton's funds. The requested discovery clearly identifies the universe of documents sought on these issues and the discovery is limited in scope.

Regarding the purported executed Operating Agreement and Proxy, Triton requests to serve (1) requests for production to Defendants (attached as **Exhibit F**); (2) an inspection request upon Defendants (attached as **Exhibit G**) and (3) a subpoena *duces tecum* to the law firm of DLA

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, Florida 33134 – (305) 377-0086

Piper, LLP (attached as **Exhibit H**), which prepared the draft Operating Agreement and Proxy. These requests seek inspection of the alleged original executed versions of the documents, production of electronic versions of these documents, including associated metadata and correspondence concerning the execution of these documents.

   Regarding the tracing and use of Triton's monies, Triton requests to serve the following:

1) Subpoena to non-party Bank of America to obtain specific banking records relating (A) the bank account into which Triton wired its monies and (B) a second bank account into which significant portions of Triton's monies were subsequently diverted (attached as **Exhibit I**) and

2) A request for production to Defendants seeking tax returns for CVH Florida and the banking records identified in the above subpoena to Bank of America (*see* **Exhibit F**).

The foregoing requests are the type of particularized discovery contemplated in the exceptions set forth in 15 U.S.C. § 78u-4(b)(3)(B). *See Vacold LLC v. Cerami,* 2001 U.S. Dist. LEXIS 1589, *21–25 (S.D.N.Y. Feb. 16, 2001) (allowing discovery on the limited issue of the nature and timing of a disputed contract).

   **B.** **The Discovery Relating to the Operating Agreement and Proxy is Necessary to Preserve Evidence.**

   Without the discovery sought by Triton, evidence may be lost. How Defendants have in their possession an "executed" Operating Agreement and Proxy cannot be meshed with Lawrence's contention he never signed these documents and his assistant and lawyer have no record of them. Turner provided these documents to Triton prior to this litigation being commenced.  A review of the signature page of version 3 (Word format) and version 3 (.pdf format) of the Operating Agreement certainly does not provide clarity:  multiple distinct differences exist between the two documents. *See* Version EAST\102509953.3 ("Word Version"), attached as **Exhibit J**[1] and EAST\102509953.3 ("PDF Version"), *see* **Exhibit A**.

   The signature block in Word Version is as follows:

   IN WITNESS WHEREOF, the undersigned have set their hands effective as of the date first set forth above.

---

[1] Exhibit J is a copy of the Word version as Plaintiff cannot file documents in Word format. Plaintiff will make the Word version available to the Court upon request.

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, Florida 33134 – (305) 377-0086

**MEMBERS:**

**RANDAZZO**

_____

John Randazzo

**TURNER**

_____

Caprice Turner

**TRITON**

Triton II LLC

By:_____

    Krishna W. Lawrence, Managing Member

[Signature Page to Operating Agreement]

However, the signature block in the "executed" PDF Version reads:

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, Florida 33134 – (305) 377-0086

IN WITNESS WHEREOF, the undersigned have set their hands effective as of the date first set forth above.

**MEMBERS:**

**Randazzo**

_____

John Randazzo, *individually*

**Turner**

_____

Caprice Turner, *individually*

**Triton**

Triton II LLC, a Florida limited liability company

By:_____

Krishna W. Lawrence, *Managing Member*

[Signature Page to Comprehensive Virtual Healthcare, LLC Operating Agreement]

7

The differences include:

1) The language contained in the footer of the PDF Version differs from the language contained in the Word Version;

2) The member names in the Word Version are fully capitalized and in the PDF Version only the first letter of the member names are capitalized;

3) The indentation of the first line on the signature page of the PDF Version is different than the indentation of the first line on the Word Version signature page;

4) The page margins of the signature page of the PDF Version are different than the margins of the signature page on the Word Version;

5) The signature page of the PDF Version is compressed in size and thus, when reviewed electronically, the page size is smaller than the rest of the pages of the document;

6) There is shading and discoloration in the signature block area of  the PDF Version where Lawrence allegedly signed;

7) The name of Triton II, LLC in the PDF Version is more fully spelled out and designated as a Florida Limited Liability Company as opposed to the Word Version;

8) The term "individually" is added to the signature of each Defendant in the PDF Version;

9) The term "managing member" is in italics in the PDF Version and

10) The  page margin on PDF Version is smaller in size and inconsistent with the other pages in the same version

Last, as stated above, the Word Version of the Operating Agreement is version 3.  Version 2 of this same Word document contains on the signature page in the footer a page number (31) and also includes DLA Piper's internal document reference number document (EAST\102509953.3.2):

EAST\102509953. 2                                              8

Both of these items are missing from the footer in version 3 of the Word Version and the PDF Version.  The only logical explanation is that someone created a separate signature page of these two documents and saved them outside of DLA Piper's document system.

Similarly, the Proxy Word version and the executed PDF version of the Proxy have several

material differences.  *See* Irrevocable Proxy EAST\102596277.1, attached as **Exhibit K[2]** ("Proxy Word Version") and Irrevocable Proxy EAST\102596277.1, *see* **Exhibit B** ("Proxy PDF Version").  The Proxy Word Version reads:

**IN WITNESS WHEREOF**, the undersigned has executed this Irrevocable Proxy as of the date first written above.

                                        **UNIT HOLDER:**

                                        **Triton II LLC**, a Florida limited liability company

                                        _____

                                        Krishna W. Lawrence, *Managing Member*

[Signature Page to Irrevocable Proxy]

The Proxy PDF Version reads:

**IN WITNESS WHEREOF**, the undersigned has executed this Irrevocable Proxy as of the date first written above.

                                        **UNIT HOLDER:**

                                        **Triton II LLC**, a Florida limited liability company

                                        Krishna W. Lawrence, *Managing Member*

---

[2] Exhibit K is a copy of the Word version as Plaintiff cannot file documents in Word format. Plaintiff will make the Word version available to the Court upon request

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, Florida 33134 – (305) 377-0086

The key differences are:

1) There is shading and discoloration in the signature block area of the Proxy PDF Version;

2) The signature for Lawrence as written on the Proxy differs from his signature located on the executed Operating Agreement and

3) DLA Piper's internal document reference number is missing on the signature page of both the Proxy Word Version and the Proxy PDF Version even though such internal document reference number is found on the first page of each of the documents.

The need to preserve the various versions of the documents, the correspondence and metadata associated with each of them is demonstrated upon the existence of these material differences. Simply, the more time that passes, the more difficult it will be to conduct forensic analysis of the various versions and metadata of the purported executed versions. Further, discovery to DLA Piper ensures that this non-party does not unintentionally destroy materials relating to the Operating Agreement and Proxy is imperative.  Triton should be allowed to inspect the original executed documents and be provided whatever electronic trail exists relating to them.

**B.     The Discovery is Needed to Prevent Undue Prejudice**

Failure to allow this limited discovery to go forward will also unduly prejudice Triton. Undue prejudice requires a showing of improper or unfair detriment that need not reach the level of irreparable harm. *See Med. Imaging Ctrs. of Am. v. Lichtenstein*, 917 F. Supp. 717, 720 (S.D. Cal. 1996). Moreover district courts have lifted the discovery stay on grounds of "undue prejudice" where defendants might be shielded from liability in the absence of the requested discovery. *See, e.g., In re Flir Sys. Inc. Sec. Litig*, 2000 U.S. Dist. LEXIS 19391 (D. Or. Dec. 13, 2000) ("the PSLRA is . . . not to be a sword with which defendants can destroy the plaintiffs' ability to obtain information from third parties who are otherwise willing to disclose it"); *Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, 1999 U.S. Dist. LEXIS 5439, *4, (S.D.N.Y. Apr. 16, 1999) (finding that the plaintiff had "made a showing of undue prejudice to justify taking particularized discovery" in the absence of which plaintiff might have been prevented from seeking redress for the alleged violations). Other common grounds discussed in determinations of undue prejudice include potential destruction of evidence and significant litigation delay.  *See In re Lernout & Hauspie Sec. Litig.,* 214 F. Supp. 2d 100, 107–08 (D. Mass. 2002).

Triton will suffer undue prejudice if the Court prevents the above limited discovery from going forward. In papers filed before this Court, Defendants take the position that CVH Florida

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, Florida 33134 – (305) 377-0086

was a legitimate enterprise even though it was administratively dissolved within a year of its creation and apparently never filed a tax return over a three year period. Defendants further assert Triton's monies were used in accordance with documents purportedly executed by Lawrence even though the executed copies of these documents have material inconsistencies in the signature pages as outlined above and the incomplete banking data Triton has in its possession reveals its funds were not used for an operating virtual healthcare business.

Defendants should not be allowed to take such positions absent providing the particularized discovery that goes to the heart of their arguments or allowing third-parties to do so. *See Vacold LLC v. Cerami*, 2001 U.S. Dist. LEXIS 1589, *24 (S.D.N.Y. Feb. 16, 2001) (lifting stay to allow discrete discovery on core issues in complaint that may otherwise allow defendants to escape liability); *Flir Sys. Inc. Sec. Litig*, 2000 U.S. Dist. LEXIS 19391, *5 (D. Or. Dec. 13, 2000) (allowing specific discovery from third-party).  For example, if Triton's monies were ultimately used to fund the acquisition of a personal real estate investment or other personal spending by Randazzo or Turner, it would undercut the notion that Triton's monies were used to fund an operating virtual healthcare business. Similarly, if DLA Piper made no changes to the signature pages of the Word versions of the drafts of the Operating Agreement or Proxy, then the Defendants did and significant questions are then raised whether Defendants are attempting to perpetrate a fraud upon this Court. And to the extent the Defendants do not have original executed copies of the Operating Agreement and Proxy, no correspondence regarding the same or correspondence as to how they allegedly received executed copies, it eviscerates their position these documents are legitimate.  Finally, real operating businesses file tax returns and do not become administratively dissolved within a year of formation. To the extent tax returns have not been filed, it reveals the sham nature of CVH Florida.

It bears noting that no prejudice will result to Defendants in seeking this limited discovery. The documents sought are limited, the cost of production is *de minimis* and no privilege or work product analysis is triggered. Moreover, because CVH Florida is defunct, "key employees" –there are none– will not be inundated with responding to discovery requests. *See Flir Sys. Inc. Sec. Litig*, 2000 U.S. Dist. LEXIS 19391, *5 (D. Or. Dec. 13, 2000) (discussing purpose of discovery stay is to avoid inundating key employees with discovery requests).  Indeed, Randazzo already concedes in his motion to dismiss he can be sued directly for misrepresentation and securities fraud, and his argument at this procedural stage is that the allegations stated against him need

11

further factual enhancement. Thus, it would seem to be within his interest, as well as Turner's, (i) to allow Triton to inspect the original executed documents and (ii) reveal how Triton's monies were used.  Bottom-line, there are significant discrepancies in the signature pages of the documents Defendants rely upon.  That the Defendants and their counsel refuse to provide even the most rudimentary discovery, for example, allowing inspection of the original executed versions of the Operating Agreement and Proxy or providing the company's federal tax returns, is a massive red flag for which the Court should immediately intervene.

**CONCLUSION**

WHEREFORE, Triton requests that the Court enter an Order granting this motion allowing the limited discovery to proceed and for such further relief the Court deems just and proper.

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(B), I hereby certify that undersigned counsel conferred with counsel for Defendants in good faith in an attempt to resolve the issues set forth in this Motion.  Defendants do not consent to the relief requested herein.

Dated:  September 4, 2018.                        Respectfully submitted,

                                                 */s/ Paul D. Turner*
                                                 Paul D. Turner (113743)
                                                 pturner@pbyalaw.com
                                                 Jonathan Feldman (12682)
                                                 jfeldman@pbyalaw.com
                                                 Benjamin Reiss (985643)
                                                 breiss@pbyalaw.com
                                                 PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
                                                 200 South Andrews Avenue, Suite 600
                                                 Fort Lauderdale, FL 33301
                                                 T: (954) 566-7117 / F: (954) 566-7115
                                                 *Attorneys for Plaintiff*

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, Florida 33134 – (305) 377-0086

## <u>Certificate of Service</u>

I certify that on September 4, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that I served counsel of record or *pro se* parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Paul Turner*

Paul D. Turner (113743)

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 – (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, Florida 33134 – (305) 377-0086