**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-cv-61469-BLOOM/Valle**

TRITON II, LLC,

      Plaintiff,

v.

JOHN RANDAZZO and
CAPRICE TURNER,

      Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS AND MOTION TO LIFT STAY

**THIS CAUSE** is before the Court upon two motions to dismiss filed by Defendants Caprice Turner, ECF No. [22], and John Randazzo, ECF No. [24] (together, the "Motions to Dismiss"). Plaintiff has also filed a Motion to Lift Stay, ECF No. [41]. The Court has carefully reviewed the Motions to Dismiss and the Motion to Lift Stay, all supporting and opposing submissions, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motions to Dismiss are granted, and the Motion to Lift Stay is denied as moot.

### I.    BACKGROUND

Plaintiff Triton II, LLC ("Plaintiff" or "Triton") filed this action against Defendants John Randazzo ("Randazzo") and Caprice Turner ("Turner") (together, "Defendants") asserting claims arising from an investment gone wrong. According to the Complaint, ECF No. [1], Triton's principal, Kris Lawrence ("Lawrence"), met Randazzo in 2015 during the course of the sale of Lawrence's company, Sentry Data Systems, in which Randazzo assisted by providing the ultimate buyer. ECF No. [1] ¶¶ 3, 12. After the sale of Sentry Data Systems, Randazzo approached Lawrence with an opportunity to invest in a company called Comprehensive Virtual

Healthcare, Inc. ("CVH NC") to operate in North Carolina. *Id.* ¶ 13. Based upon his experience with Randazzo during the sale of Sentry Data Systems, Lawrence trusted Randazzo. *Id.* ¶ 14. As a result, Lawrence agreed to invest approximately $3 million in CVH NC—which Randazzo represented to Lawrence as being an operating healthcare business—in exchange for a thirty percent interest in the company. *Id.* ¶ 15. Although Lawrence caused Triton to wire almost $3 million to CVH NC's bank account as a result of Randazzo's representations, the money was ultimately returned because another investor backed out. *Id.* ¶¶ 17-18.

In June or July, 2015, Randazzo presented Lawrence with another opportunity to make an investment in a company called Comprehensive Virtual Healthcare, Inc. Florida ("CVH Florida"). *Id.* ¶ 19. According to Lawrence, CVH Florida was formed on July 16, 2015, listed Randazzo's home address as its business address, and Turner, Randazzo's stepdaughter, was the person in charge of managing the company. *Id.* ¶¶ 10, 20. Lawrence further contends that had he known these facts and had they not been concealed from him, he and Plaintiff never would have invested in CVH Florida. *Id.* Lawrence eventually determined that Triton would invest, and wired approximately $3 million dollars to acquire a thirty percent interest in CVH Florida. *Id.* ¶ 21.

Triton further alleges that Defendants procured this investment by making at least four misrepresentations: 1) that CVH Florida was operational; 2) that it already had healthcare providers enlisted to participate in the business; 3) that the business would get underway once Plaintiff provided the investment; and 4) the investment would be used for the described virtual healthcare business of CVH Florida. *Id.* ¶¶ 24-25. According to Plaintiff, instead of using the funds for the agreed upon investment, Defendants allocated a portion of the money for Defendants' salaries and other expenses, transferred another portion of the funds to other bank

accounts, payed third-party creditors, and, with the remaining portion, acquired interests in other companies. *Id*. ¶¶ 26, 34. CVH Florida was administratively dissolved by the end of September, 2016. *Id.* ¶ 30.

When Lawrence confronted Randazzo in June, 2018 to obtain an explanation with respect to the use of funds, Randazzo refused to provide any information or documentation. *Id.* ¶¶ 31-32. Thereafter, counsel for Lawrence and Triton contacted Turner, who provided a breakdown of how the funds had been used—including for payment of salaries and expenses, and investments in other start-up companies. *Id.* ¶¶ 34-35. Apparently, the investments made with money initially invested by Triton were booked in the name of CVH Holdings, LLC, not in the name of Triton or Lawrence. *Id.* ¶ 38. CVH Holdings, LLC is a dissolved company, also listing Randazzo's home as a business address and Turner as registered agent and manager. *Id*. ¶ 39. Triton contends that it never would have made the investment if this information had not been concealed from it and Lawrence. *Id*. ¶ 40.

As a result of these alleged misrepresentations and misuse of Triton funds, Triton asserts claims for securities fraud in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (the "Exchange Act") and Rule 10b-5, 17 C.F.R. § 240.10b-5 (Count 1), fraudulent misrepresentation (Count 3), conversion (Count 4), civil conspiracy (Count 5), breach of fiduciary duty (Count 6), aiding and abetting breach of fiduciary duty (Count 7), unjust enrichment (Count 8), and negligent misrepresentation (Count 9).[1] Defendants seek dismissal of all but the first two counts pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of standing—and therefore subject matter jurisdiction—and of all claims pursuant to Rule 12(b)(6) for failure to state a claim.

---

[1] Plaintiff filed a notice of voluntary dismissal of Count 2 on July 3, 2018. *See* ECF No. [4].

## II.    LEGAL STANDARD

### A.  Failure to State a Claim

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the

factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

### B. Standing

One element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The law of Article III standing serves to prevent the judicial process from being used to usurp the powers of the political branches, and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013)) (alteration adopted; citations omitted). "Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redress[a]bility." *Dermer v. Miami-Dade Cty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Specifically, "[t]o have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003); *see Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005) (same).

"The party invoking federal jurisdiction bears the burden of proving standing.'" *Fla. Pub. Interest Research Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004) (quoting *Bischoff v. Osceola Cty.*, 222 F.3d 874, 878 (11th Cir. 2000)). A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." "A 'facial attack' on the complaint 'require[s] the court merely to

look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "A 'factual attack,' on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at 1529); *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.").

"In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). As such, "[w]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1), the district court is free to independently weigh facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)). Through this lens, the Court considers the instant Motion.

### III. ANALYSIS

#### A. Claims against Randazzo

##### i. Securities fraud (Count 1)

Randazzo argues that Triton fails to state its claim for securities fraud with the necessary

particularity under Rule 9(b) of the Federal Rules of Civil Procedure and as required by the Private Securities Litigation Reform Act, 15 U.S.C. §78u-4, *et seq.* ("PSLRA").

Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) thus forces a plaintiff to "offer more than mere conjecture," *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and "requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also Ferrell v. Durbin*, 311 F. App'x 253, 258 (11th Cir. 2009) (same).

In addition to the requirements imposed by Rule 9(b), the PSLRA requires that a complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). "A sufficient level of factual support for a 10b claim may be found where the circumstances of the fraud are pled in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (internal citation, quotations, and alterations omitted).

In order to state a claim for securities fraud, a plaintiff must allege "1) a misstatement or omission, 2) of a material fact, 3) made with scienter, 4) on which plaintiff relied, 5) that proximately caused his injury." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir. 1999) (citing *Ross v. Bank S., N.A.*, 885 F.2d 723, 728 (11th Cir. 1989). In pleading such a claim, the PLSRA further requires that plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). In the Eleventh Circuit, the required state of mind is severe recklessness. *See Bryant*, 187 F.3d at 1287 ("We conclude that in the Eleventh Circuit, a securities fraud plaintiff must plead scienter with particular facts that give rise to a strong inference that the defendant acted in a severely reckless manner.").

Upon review, Triton fails to satisfy the heightened pleading standard imposed by Rule 9(b) and the PLSRA. Specifically, Triton fails to adequately set forth each precise statement Randazzo allegedly made, the time and place each statement was made by Randazzo, the manner in which each statement misled Triton, the reason or reasons why each statement is misleading, and what Randazzo obtained as a result.

Moreover, Triton's allegations with respect to scienter or requisite state of mind are insufficient. In determining whether the requisite state of mind is adequately pled, "the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1220, 1239 (11th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007)). Triton alleges that after the investment in CVH NC failed to move forward and Triton's money was returned, Randazzo represented to Lawrence that a similar start-up company existed in Florida, CVH Florida, that

would employ the same business strategy as CVH NC.  ECF No. [1] ¶ 19.  According to Triton, that "business strategy" included that CVH Florida was operational, already had healthcare providers ready to participate, and the business would proceed once Triton made the investment. *Id*. ¶ 24.  However, it is unclear from the allegations whether the alleged representations were made specifically with respect to CVH Florida, or if based upon Randazzo's alleged general representation that CVH Florida would have the same business strategy and prospects as CVH NC, Lawrence assumed that whatever specific statements Randazzo made about CVH NC would apply to CVH Florida.  Furthermore, Triton alleges that it would never have made the investment in CVH Florida and CVH Holdings had Lawrence known that the companies' business addresses corresponded to Randazzo's home address and Turner had no experience running a company. *Id.* ¶¶ 20, 39-40. However, these allegations do give rise to an inference that Randazzo acted with severe recklessness, especially when Triton also alleges that Randazzo and Turner were the other members of CVH Florida. *Id.* ¶ 23.  Accordingly, Trition fails to state a claim for securities fraud.

### ii.    Fraudulent misrepresentation (Count 3)

Randazzo argues that Triton's fraudulent misrepresentation claim also fails to satisfy Rule 9(b)'s heightened pleading standard.  The Court agrees.  "There are four elements necessary to establish fraudulent misrepresentation: (1) a false statement concerning a material fact; (2) the representer's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 310 (Fla. 1st DCA 2011) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010), and *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)).  With respect to inducement, a plaintiff cannot withstand a motion

to dismiss for failure to state a cause of action "without specifically alleging more than the vague and conclusory statement they [he was] induced by the misrepresentation[.]" *Hillcrest Pacific Corp. v. Yamamura*, 727 So. 2d 1053, 1057 (Fla. 3d DCA 1995).

Here, Triton's allegations fail to satisfy Rule 9(b) for the same reasons already set forth in analyzing the securities fraud claim. *See Brady v. Medtronic, Inc.*, No. 13-62199-CIV-BLOOM/VALLE, 2015 WL 11181971, at *2 (S.D. Fla. Mar. 30, 2015) ("[T]he legal standard under Fed. R. Civ. P. 9(b) applies to Plaintiff's fraudulent misrepresentation claim."). In addition, Triton alleges only in conclusory fashion that "Randazzo intended for his statements of material fact and omissions of material fact to induce Plaintiff to act by making the Investment." ECF No. [1] ¶ 64. Thus, the Complaint fails to state a claim for fraudulent misrepresentation.

### iii. Negligent misrepresentation (Count 9)

Randazzo argues that Triton's claim for negligent misrepresentation is subject to dismissal because Triton fails to allege what material information Randazzo misrepresented or how he failed to exercise reasonable care in making the alleged statements. Because the Court has already determined that Triton has failed to satisfy Rule 9(b) in alleging fraudulent misrepresentation, Triton's claim for negligent misrepresentation also fails.

To state a claim for negligent misrepresentation in Florida, a plaintiff must allege: (1) a misrepresentation of a material fact; (2) that the defendant made the representation without knowledge as to its truth or falsity, or under circumstances in which he ought to have known of its falsity; (3) that the defendant intended that the misrepresentation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993). Because negligent misrepresentation sounds in fraud, "Rule 9(b)'s heightened pleading standard applies." *Lamm v.*

*State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir.2014) (citing *Souran*, 982 F.2d at 1511 (holding negligent misrepresentation sounds in fraud under Florida law)). Therefore, Triton's claim for negligent misrepresentation is subject to dismissal for the same reasons as the fraudulent misrepresentation claim.

### B. Claims against Randazzo and Turner

#### i. Lack of standing with respect to Count 4 through 8

Randazzo and Turner argue that Triton lacks standing to assert its remaining claims for conversion (Count 4), civil conspiracy (Count 5), breach of fiduciary duty and aiding and abetting breach of fiduciary duty (Counts 6 and 7), and unjust enrichment (Count 8) against them directly because the harm alleged is not a direct harm to Triton as a member of CVH Florida, but to CVH Florida itself, and that claims for alleged self-dealing and mismanagement of company assets may not be brought directly by shareholders.

"[A]n action may be brought directly only if (1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company **and** (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members." *Dinuro Invs., LLC v. Camacho*, 141 So. 3d 731, 739-40 (Fla. 3d DCA 2014) (emphasis in original); *see also Daccache v. Quiros*, No. 16-21575-CIV-MORENO, 2018 WL 2248409, at *7 (S.D. Fla. May 15, 2018) (same) (citing *Dinuro*). Indeed, "[a] claim may be brought in a direct action . . . where the injury was sustained directly by the plaintiff bringing the suit and is separate and distinct from injuries sustained by the corporation and all other shareholders equally." *Medsker v. Feingold*, 307 F. App'x 262, 264 (11th Cir. 2008).

Here, setting aside pleading deficiencies that the Court addresses in the following

sections of this order, Triton's claims constitute direct injuries sustained by it. The Complaint alleges that Randazzo made false and misleading statements to Lawrence in order to procure Triton's investment in CVH Florida, which Triton otherwise would not have done. As a result, the claims premised upon such false and misleading statements involve direct injuries sustained by Triton based on the statements made to Lawrence as its principal. *See Medsker*, 307 F. App'x at 265 ("The corporate entity could not bring suit to recover the investment . . . made relying on the fraudulent actions of the defendants; thus, these claims may be maintained in this direct action.").

However, to the extent that Triton's claims are premised upon the alleged actions of Defendants subsequent to its investment in CVH Florida—use of funds for paying salaries, expenses, creditors, and investing in other companies—Triton lacks standing to assert those claims directly because the loss of value to Triton is functionally indistinguishable from the loss to CVH Florida and the other members. Indeed, the fact that Triton, Randazzo and Turner are the only members of CVH Florida does not permit Triton to assert a claim directly that otherwise could only be asserted derivatively. *See Dinuro*, 141 So. 3d at 735, 743 (acknowledging the difficulty in distinguishing loss to a member and loss to the LLC, and holding nonetheless that "Florida law does not permit a member of an LLC to sue individually for damages arising out of its status as a member of a company unless the damages arise from a direct harm and special injury, or if there is a separate duty owed from the defendant to the plaintiff member."). Thus, Triton may only assert such claims derivatively. *See Medsker*, 307 F. App'x at 264 ("In traditional derivative suits, shareholders sue to enforce a right belonging to the corporation for which the corporation itself could have brought suit.").[2]

---

[2] In a footnote, Triton contends that it has set forth sufficient allegations to support piercing the

ii.     **Conversion (Count 4)**

In addition to lack of standing, Randazzo and Turner argue that Triton's claim for conversion should be dismissed because Triton did not have ownership of the funds it claims were converted.  The Court agrees.

Conversion is an "unauthorized act which deprives another of his property permanently or for an indefinite period of time."  *Indus. Park Dev. Corp. v. Am. Express Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (S.D. Fla. 2013) (applying Florida law) (quoting *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1291 (11th Cir. 2001)).  To state such a claim, a party must allege facts showing an ownership of the property and facts that the other party wrongfully asserted dominion over it.  *Id*. (citing *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011)).  "It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion."  *Gasparini*, 972 So. 2d at 1055.  "In order for money to be an appropriate subject for a conversion claim, there must be an obligation for the receiver to keep intact or deliver the specific money at issue."  *Indus. Park Dev. Corp.*, 960 F. Supp. 2d at 1366 (internal citation omitted).

In the Complaint, Triton alleges that after it invested the almost $3 million in CVH Florida, Defendants converted the funds by paying themselves salaries and personal expenses,

_____

corporate veil of CVH Florida to reach Defendants directly; however, upon review, the Complaint does not set forth such a theory of liability clearly.  *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("To 'pierce the corporate veil' three factors must be proven: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.") (internal citation omitted).  Thus, if Triton intends to rely on such a theory, it is incumbent upon Triton to clearly allege it.  Triton may not amend or otherwise clarify its allegations in response to a motion to dismiss.  *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x. 657, 665 (11th Cir. 2015).

transferring funds to another bank account, paying third-party creditors, withdrawing $1 million, and using funds to invest in other start-up companies. ECF No. [1] ¶70. Triton has not alleged that Defendants were required to keep the monies intact for its benefit or that they were required to deliver the money to Triton. Although the specific amount of money may be identifiable in the sense that Triton transferred $2,963,133.44 from its bank account to CVH Florida, this fact standing alone does not create a tort cause of action for conversion. Accordingly, Triton cannot state a claim for conversion as a matter of law, requiring dismissal of Count 4.

### iii. Civil Conspiracy (Count 5)

Randazzo and Turner move to dismiss Triton's claim for civil conspiracy for failure to state a claim. In the Complaint, it appears that Triton asserts two bases for civil conspiracy, one premised upon the alleged fraudulent misrepresentations, and the other premised upon the conversion. However, because Triton fails to sufficiently state a claim for fraudulent misrepresentation, and the Court has determined that the claim for conversion fails as a matter of law, the claim for civil conspiracy necessarily fails. Accordingly, Count 5 is subject to dismissal.

### iv. Breach and aiding and abetting breach of fiduciary duty (Counts 6 and 7)

Randazzo and Turner seek dismissal of the claims premised upon breach of a fiduciary duty on the basis that Triton fails to allege any facts demonstrating the existence of a fiduciary relationship between Triton and Defendants.

The elements of a claim for breach of fiduciary duty include: (1) the existence of a fiduciary relationship; (2) breach of a duty owed by the fiduciary; and (3) proximate cause. *Combe v. Flocar Inv. Grp. Corp.*, 977 F. Supp. 2d 1301, 1307 (S.D. Fla. 2013) (citation omitted). Fiduciary relationships must be either expressly or impliedly created. *See Greenberg v. Miami*

*Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1071 (S.D. Fla. 2003) (citing

*Capital Bank v. MVB, Inc.*, 644 So.2d 515, 518 (Fla. 3d DCA 1994)); *see also Bldg. Educ. Corp.*

*v. Ocean Bank*, 982 So. 2d 37, 41 (Fla. 3d DCA 2008) (quoting *Doe v. Evans*, 814 So. 2d 370,

374 (Fla. 2002)) ("While a contractual relationship between the parties is not required to form a

fiduciary relationship, a party must be 'under a duty to act for or to give advice for the benefit of

another upon matters within the scope of that relation.'").  Likewise, a claim for aiding and

abetting the breach of fiduciary duty requires a plaintiff to allege the following: (1) an underlying

violation by the primary wrongdoer, (2) knowledge of the underlying violation by the alleged

aider and abettor, and (3) the rendering of substantial assistance in committing the wrongdoing

by the alleged aider and abettor.  *Lawrence v. Bank of Am., NA*, 455 F. App'x 904, 906-07 (11th

Cir. 2012); *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991); *ZP No. 54 Ltd.*

*P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 372 (Fla. 5th DCA 2005).  "The most

difficult part of this analysis is determining if a fiduciary duty actually exists." *Traditions Senior*

*Mgmt., Inc. v. United Health Adm'rs, Inc.*, No. 8:12-cv-2321-T-30MAP, 2013 WL 3285419, at

*2 (M.D. Fla. June 27, 2013)).

In its response, Triton appears to concede that the Complaint is not premised upon a

fiduciary duty arising from any contract between the parties.  *See* ECF No. [32] at 9.  Instead,

Triton contends that its allegations regarding the trust Lawrence placed in Randazzo based upon

their previous interactions concerning the sale of Sentry Data Systems and the fact that Randazzo

was the principal, controller and decision-maker for CVH Florid,a are sufficient for an implied

fiduciary duty.  The Court disagrees.

"A fiduciary relationship which is implied in law is based on the specific factual

circumstances surrounding the transaction and the relationship of the parties." *First Nat'l Bank*

*& Tr. Co. of Treasurer Coast v. Pack*, 789 So. 2d 411, 415 (Fla. 4th DCA 2001) (citations omitted). "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1319 (S.D. Fla. 2009). Generally, "in an arms-length transaction, however, there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered." *Id.* (citing *Watkins v. NCNB Nat'l Bank, N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993)).

Here, Triton's allegations are insufficient because they do not evidence anything more than an arms-length transaction. The fact that Lawrence placed trust in Randazzo based upon their past dealings does not plausibly state that a fiduciary duty arose with respect to the investment Randazzo solicited for CVH Florida. Indeed, as alleged, Lawrence by all accounts is a sophisticated businessman who had successfully sold a company for a price high enough that it generated a $6 million fee for Randazzo's role in providing a buyer. In addition, there are no allegations that the information that was allegedly concealed from Lawrence could not have been discovered, nor does the Complaint contain any allegations from which a duty could otherwise be implied. To the extent that Triton's claim is premised upon the post investment actions of Randazzo, as principal and decision-maker for CVH Florida, such a claim is derivative in nature, and thus Triton lacks standing to assert it. Accordingly, the claim for breach of fiduciary duty against Randazzo is due to be dismissed.

Additionally, because Triton fails to state a claim for breach of fiduciary duty, the claim for aiding and abetting asserted against Turner must also fail. *See Patel v. Catamaran Health Solutions, LLC*, No. 15-cv-61891-BLOOM/Valle, 2016 WL 5942475, at *10 (S.D. Fla. Jan. 14,

2016) ("Where facts are insufficient to state a claim for breach of fiduciary duty, a derivative claim for aiding and abetting a breach of duty of [] fiduciary duty cannot survive a motion to dismiss.").

### v. Unjust enrichment (Count 8)

Defendants argue that Triton's unjust enrichment claim should be dismissed because, as alleged, Triton conferred a benefit upon CVH Florida, not Defendants, and that following transfer, the funds belonged to CVH Florida and not Triton. In response, Triton asserts that it has adequately alleged that the benefit conferred was the misappropriation of funds that Defendants used for their own purposes.

To state a claim for unjust enrichment under Florida law, a party must allege "a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012) (quoting *Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So. 2d 205, 207 (Fla. 2d DCA 1995)).

Triton's claim fails for two reasons. First, as Defendants point out, Triton's allegations with respect to unjust enrichment are inconsistent. In the Complaint, Triton alleges that it transferred its investment to CVH Florida, and that following the transfer, Defendants misappropriated the funds. Thus, Triton has not sufficiently alleged that the investment is a benefit conferred upon either one of Defendants individually. Second, to the extent that Triton alleges that the subsequent misappropriation of funds by Defendants constitutes the benefit conferred for purposes of its unjust enrichment claim, the Court has already determined that Triton lacks standing to assert such a post-investment claim directly, assuming that such a claim

would otherwise be proper. *See Medsker*, 307 F. App'x at 265 (noting that claims essentially for self-dealing and mismanagement of funds may only be brought as derivative claims). Accordingly, Triton fails to state a claim for unjust enrichment.

### C.  Remaining arguments

Finally, Defendants argue that Triton's prayer for relief should be stricken and that the Complaint should be dismissed pursuant to Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure because CVH Florida is an indispensable party.  In its response, Triton concedes the need to replead its prayer for relief, and thus the Court will permit it to do so.  *See* ECF No. [32] at 12.  However, because the Court has determined that the Complaint should be dismissed in its entirety on other grounds, the Court does not consider Defendants' indispensable party arguments regarding CVH Florida.

### IV.     CONCLUSION

For the reasons set forth, the Court **GRANTS** Defendants Randazzo and Turner's Motions to Dismiss, **ECF Nos. [22], [24]**.  Counts 1, 3, and 5 through 9 are dismissed without prejudice.  Triton may file an Amended Complaint, **on or before October 19, 2018**.  Count 4 is dismissed with prejudice.  In addition, the Motion to Lift Stay, **ECF No. [41]**, is **DENIED AS MOOT**, as there is no longer a motion to dismiss pending, and the stay shall therefore be lifted upon the filing of the Amended Complaint.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9th day of October, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record