UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Triton II, LLC<br><br>    Plaintiff,<br><br>v.<br><br>John Randazzo and<br>Caprice Turner,<br><br>    Defendants. | Case No. Case No. 0:18-cv-61469-BB<br><br><br><br>Jury Trial Demanded |

# FIRST AMENDED COMPLAINT

## Substance of the Action

1.  This is an action regarding the Defendants' improper actions to induce Triton to transfer $2,963,133.44 to acquire a 30% interest in a purported operating virtual healthcare business that Randazzo claimed to exist called Comprehensive Virtual Healthcare, LLC ("CVH Florida"). No such business existed. At no point in time did CVH Florida have ongoing operations, customers or employees. Rather, Randazzo lied.

2.  When Kris Lawrence, who is the principal and member of Triton, pressed Randazzo and Turner for information and documents, Triton finally became aware of the fraud perpetrated upon it. Directly confronted in the summer of 2018, Randazzo refused to provide any information about what happened to Triton's monies. Thereafter, Turner produced a paper trail that established that CVH Florida was a sham, Randazzo lied to Lawrence and that Defendants absconded with Triton's monies.

3. Triton now sues under counts for: (1) securities fraud under Section 10(b) of the Exchange Act and Rule 10b-5; (2) fraudulent inducement; (3) negligent misrepresentation; (4) civil conspiracy and (5) unjust enrichment.

### Jurisdiction and Venue

4. This is an action for violation of federal securities laws, which is within this Court's original subject matter jurisdiction under 28 U.S.C. § 1331, and for state law claims within the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

5. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events establishing the claims occurred here.

6. Defendant Turner is subject to this Court's jurisdiction under Florida's long-arm statute, *Fla. Stat.* § 48.193, and based on her purposeful and substantial contacts with Florida and her knowing participation in the tortious acts set forth below.

### Parties

7. Triton II, LLC is a Delaware limited liability company that maintains its principal place of business and carries out its core executive and administrative functions in Broward County, Florida. Triton's members are Lawrence and his family trust. Lawrence is the managing member of Triton and controls and directs all investment decisions on its behalf.

8. Randazzo is an individual who resides in Broward County, Florida and is otherwise *sui juris*.

9. Turner, is upon information and belief, a resident of California. Turner is Randazzo's step-daughter.

## General Allegations and Facts

A.  **Randazzo's misrepresentations regarding CVH Florida**

10. Defendants' fraud relating to CVH Florida begins with another investment opportunity pitched to Lawrence and Triton that ultimately never came to fruition: a North Carolina company called Comprehensive Virtual Healthcare, Inc. ("CVH NC").

11. Lawrence met Randazzo in 2015 in connection with the sale of his company. Lawrence owned a Florida company called Sentry Data Systems. Randazzo approached Lawrence with a prospective buyer, who ultimately purchased the company. Randazzo received approximately $6 million for his role through the closing of this sale.

12. Shortly after the closing of the sale of Sentry Data Systems, Randazzo approached Lawrence with a pitch to induce him to invest in CVH NC along with a man named Jason Williams. Randazzo claimed to Lawrence he had played a role in selling Williams' company for approximately $170 million to the same buyer that had purchased Lawrence's company and that Randazzo had received approximately $4 million for his involvement in that sale.

13. Lawrence's formal educational background is limited: he did not graduate high school nor does he hold any professional designations or certifications in finance or accounting. Because of his limited educational background, successful experience with Randazzo in selling Lawrence's company and the other significant multi-million dollar transactions that Randazzo represented to Lawrence he was involved in, *e.g.*, the sale of Williams' business, Lawrence trusted Randazzo and his purported financial acumen. His trust of Randazzo rendered him an easy target for the deception that followed.

14. Lawrence does not use e-mail, and instead, communicates with others by phone or in person meetings, and in limited instances, text messaging on his cellular phone. Any attempt by a third-party to contact Lawrence electronically is done through his assistant, Kelly Baker.

15. In the spring and early summer of 2015, Randazzo solicited Lawrence to make an investment of $3 million in CVH NC.

16. Randazzo represented to Lawrence that CVH NC was an operating healthcare company that had a business model and strategy under which it would use virtual technology to enable patients to connect with health care providers and receive primary and specialty care. Randazzo further represented to Lawrence that CVH NC had enlisted healthcare providers to participate in the business and that the healthcare business would proceed once Triton, made its investment. Among other things, on May 29, 2015, Randazzo represented to Lawrence, by emailing Baker, that Randazzo had "the commitment of 2 Blue Cross plans to make sure it [i.e., the virtual healthcare business of CVH NC] is both viable and the potential for significant upside returns."

17. Accepting Randazzo's narrative and representations regarding CVH NC's business strategy and prospects, Randazzo sent Lawrence on June 18, 2015 various documentation relating to the venture and arranged for Triton to wire $3,000,000 to a bank account purportedly for the CVH NC investment.

18. Whether Randazzo's representations relating to CVH NC were true is unknown. Nonetheless, CVH NC was short lived. In early July 2015, Randazzo explained to Lawrence that Williams had backed out of the deal, and thus, the investment in North Carolina would not go forward. Of the original $3,000,000, $2,963,133.44 was returned to Triton.

19. Nevertheless, Randazzo remained determined to obtain Triton's money.

4

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, FL 33134 • (305) 377-0086

20. Through a series of oral representations from Randazzo to Lawrence in South Florida during the period of July 12, 2015 through July 31, 2015 ("Time Period"), Randazzo represented to Lawrence that another start-up company existed in Florida that employed the same business strategy as CVH NC: CVH Florida. In addition, Randazzo and Turner sent e-mails to Baker during the Time Period to facilitate the transfer of Triton's monies to the CVH BoA Account (as defined below).

21. At all material times, Randazzo and Turner controlled CVH Florida.

22. Specifically, during the Time Period, Randazzo made the following material oral representations to Lawrence in South Florida regarding CVH Florida to induce Triton to make a multi-million dollar transfer to acquire a purported 30% interest in CVH Florida:

   a. CVH Florida was operating as a virtual healthcare company to enable patients to connect with health care providers and receive primary and specialty care ("Statement 1");

   b. Although CVH Florida was a start-up, it already had ongoing business operations and exploitable opportunities with insurance carriers, including Blue Cross and Blue Shield of Florida, and healthcare providers in the virtual healthcare field based upon Randazzo's relationship with such parties ("Statement 2");

   c. Triton's monies would be used to fund day-to-day business operations and the growth of the operating virtual healthcare business of CVH Florida ("Statement 3");

    d. Because CVH Florida had ongoing business operations and opportunities with insurance carriers and healthcare providers, CVH Florida had immediate revenue generation opportunities ("Statement 4") and

    e. Randazzo had already received an offer from an undisclosed third-party to acquire CVH Florida for $50 million which would yield a valuation of a 30% interest in CVH Florida of $15 million ("Statement 5"; and together with Statement 1, Statement 2, Statement 3 and Statement 4, the "Statements").

23. The Statements were material to Triton because they conveyed to Lawrence that Triton would be investing in a unique business opportunity of an operating business with high growth prospects that already had a meaningful outside valuation.

24. Relying on the Statements made by Randazzo to Lawrence that Triton would be investing in an entity – CVH Florida – that (1) was operating as a virtual healthcare company; (2) already had ongoing business operation and opportunities with insurance carriers and healthcare providers in the virtual healthcare field; (3) had immediate revenue generation opportunities; and (4) Randazzo had already received an offer from an undisclosed third-party to acquire CVH Florida for $50 million, which would imply a $15 million valuation of the 30% interest that Randazzo solicited Triton to acquire, in addition to the significant multi-million dollar transactions Lawrence was aware Randazzo had been involved in; on August 3, 2015, Triton, at the direction of Lawrence, wired $2,963,133.44 to a bank account at Bank of America, N.A. under the Defendants' exclusive control ("CVH BoA Account") to purportedly acquire a 30% interest in CVH Florida.

25. Based on documents provided by Turner in June, 2018, Randazzo and Turner were the purported remaining 70% members in CVH Florida. However, based on bank statements provided in June, 2018, neither Randazzo nor Turner made any material capital contribution to

6

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, FL 33134 • (305) 377-0086

CVH Florida at the time the entity was formed or at any time thereafter. Rather, according to the documents provided by Turner in June, 2018, Defendants acquired their purported combined 70% interest in CVH Florida for $7. As such, Defendants never had any material amount of their personal funds at risk in the venture.

26. Each of the Statements made by Randazzo to Lawrence during the Time Period was false at the time it was made, and Randazzo acted with scienter with respect to all such Statements.

> a. As to Statement 1, such statement was false and misleading at the time it was made because CVH Florida was not operating as a virtual technology company during the Time Period and Randazzo, as the promoter of the transaction and as a purported member in CVH Florida, was aware of such fact or recklessly disregarded it;
>
> b. As to Statement 2, such statement was false and misleading at the time it was made because neither Randazzo nor CVH Florida had ongoing business opportunities or relationships with insurance carriers or healthcare providers in the virtual healthcare field during the Time Period and Randazzo, as the promoter of the transaction and as a purported member in CVH Florida, was aware of such fact or recklessly disregarded it;
>
> c. As to Statement 3, such statement was false and misleading at the time it was made because CVH Florida had no existing day-to-day operations during the Time Period and Randazzo, as the promoter of the transaction and as a purported member in CVH Florida, was aware of such fact or recklessly disregarded it;

    d. As to Statement 4, such statement was false and misleading at the time it was made because CVH Florida had no immediate revenue generation opportunities during the Time Period and Randazzo, as the promoter of the transaction and as a purported member of CVH Florida, was aware of such fact or recklessly disregarded it, and

    e. As to Statement 5, such statement was false and misleading at the time it was made because Randazzo never received any preliminary expression of interest from anyone to acquire CVH Florida for "$50 million" during the Time Period and Randazzo was aware of such fact or recklessly disregarded it.

27. Each of the Statements by Randazzo to Lawrence misled Triton:

    a. As to Statement 1, such statement misled Triton because it improperly conveyed that Triton was investing in an entity that was operating as a virtual healthcare company when no such operations were taking place;

    b. As to Statement 2, such statement misled Triton because it improperly conveyed that Triton was investing in an entity that had ongoing business opportunities or relationships with insurance carriers or healthcare providers in the virtual healthcare field when no such opportunities or relationships existed;

    c. As to Statement 3, such statement misled Triton because it improperly conveyed that Triton's monies would be used to sustain legitimate operating costs of a virtual healthcare business when no such operating costs existed;

    d. As to Statement 4, such statement misled Triton because it improperly conveyed that with respect to CVH Florida's purported business opportunities and relationships within the virtual healthcare business, such opportunities and

relationships would yield immediate revenues when no such immediate revenue sources were available; and

 e. As to Statement 5, such statement misled Triton because it improperly conveyed that Triton's acquisition of a 30% interest in CVH Florida would be immediately more valuable than the amount invested when this was not so.

28. As a result of the false and misleading Statements, Randazzo induced Triton to transfer $2,963,133.44 to the CVH BoA Account, which materially increased the value of Defendants' otherwise valueless interests in CVH Florida in August, 2015.

29. Subsequent events serve as circumstantial proof that all the Statements were false at the time Randazzo made them to Lawrence, that Randazzo had the required scienter in that he knew of the falsity of each such Statement at the time they were made or recklessly disregarded it, and that Randazzo and Turner formed CVH Florida for the improper purpose to defraud Triton:

 a. CVH Florida never at any point operated as a healthcare business.

 b. A little over a year after its formation, CVH Florida was administratively dissolved.

 c. CVH Florida never established office space after its formations to operate, but instead, its principal place of business was always Randazzo's home address.

 d. CVH Florida never generated any revenues or profits at any time.

 e. CVH Florida never entered into any agreement with healthcare providers or insurers in the virtual healthcare field.

 f. Other than Triton's monies transferred on August 3, 2015, neither Randazzo nor Turner ever made any material capital contribution to CVH Florida at formation of the entity, at the time Triton wired its funds on August 3, 2015 or

9

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, FL 33134 • (305) 377-0086

any time thereafter, and thus, were never in a position to suffer financial harm, or actually suffered financial harm, as to their purported 70% interest in CVH Florida.

g. As of the commencement of this litigation, CVH Florida never filed any federal income tax return for 2015, 2016 or 2017.

h. CVH Florida never had any employees that operated a virtual healthcare business. Turner alleged in June, 2018 that she was the sole employee of CVH Florida, however, because CVH Florida has no federal tax filings, whether such statement by Turner is true is unknown. Regardless, Turner also alleged that she only "worked" for CVH Florida for one and a half years.

i. Turner had no experience (i) in the healthcare industry generally, or the virtual healthcare industry specifically or (ii) C-Suite experience.

30. Finally, the actual use of Triton's monies by the Defendants in the 15 months after August 3, 2015 serves as additional circumstantial proof that all the Statements were false at the time Randazzo made them to Lawrence, that Randazzo had the required scienter in that he knew of the falsity of each such Statement at the time they were made or recklessly disregarded it, and that Randazzo and Turner formed CVH Florida for the improper purpose to defraud Triton

31. Namely, Triton's $2,963,133.44 was never used to fund the day-to-day operations of a virtual healthcare business. Instead, approximately $2,465,000 was misappropriated by the Defendants as follows:

a. In February 2016, Defendants transferred $250,000 to another account at Bank of America that was under Defendants' control which had no business purpose relating to virtual healthcare operations for CVH Florida ("3512 Account");

    b. In April 2016, Defendants withdrew $1,000,000 from the CVH BoA Account with its final destination unknown and separately transferred $530,000 to the 3512 Account;

    c. In May 2016, Defendants transferred $425,200 to the 3512 Account;

    d. In September 2016, Defendants transferred $260,140 to the 3512 Account;

32. As to the remaining approximate $500,000, Defendants primarily misappropriated such monies as follows:

    a. Pay personal expenses, including meals, flights and personal services, for Turner or Randazzo.

    b. Pay legal expenses for other business ventures involving Turner or Randazzo and

    c. Even though CVH Florida had no ongoing business operations in the virtual healthcare industry, it transferred directly to Turner (i) approximately $45,000 in 2015 and (ii) approximately $108,000 in 2016.

33. Randazzo made each of the false Statements to Lawrence with the intent to induce Triton to transfer $2,963,133.44 to the CVH BoA Account on August 3, 2015 which materially increased the value of Defendants' otherwise valueless interests in CVH Florida at such time. Absent Randazzo making the Statements or in fact disclosing the true status and financial viability of CVH Florida during the Time Period or what Defendants actually intended to do with Triton's funds, Triton would never have made the transfer to acquire any interest in CVH Florida.

**B. Defendants' June 2018 attempt to explain their fraud**

34. On June 11, 2018, Lawrence met with Randazzo to confront him as to what occurred with the nearly $3,000,000 Triton transferred in August, 2015.

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, FL 33134 • (305) 377-0086

35. At this meeting, Randazzo refused to provide any basic level of disclosure as to the current operations of CVH Florida, what happened to Triton's money, or what documentation existed regarding the company's operations.

36. Later that same day, counsel for Lawrence and Triton emailed Turner requesting that she provide the relevant information regarding CVH Florida.

37. In response, Turner revealed that CVH Florida never operated as a virtual healthcare company, that there were no historical or ongoing business operations and opportunities with insurance carriers and healthcare providers in the virtual healthcare field, and that there were never was any revenue generation for CVH Florida.

38. Turner also represented that, instead of using Triton's monies as Randazzo represented to Lawrence they would be used for, $2.425 million of Triton's monies were purportedly used to invest in other start-up companies through another company controlled by Defendants.

39. None of these investments are held in Triton's name and Triton holds no membership interest in this separate entity. Regardless, Triton never knew of, let alone approved or at any time agreed to, any use of its monies for such investments by the Defendants. Put simply, Triton and Lawrence never agreed to transfer $2,963,133.44 on August 3, 2015 for the purpose of Defendants then using such monies to make investments in other companies on Triton's behalf with the Defendants receiving an unheard of 70% fee on any gain in such investment.

12

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, FL 33134 • (305) 377-0086

# COUNTS

### Count 1
### Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### against Randazzo

40. Triton adopts and incorporates paragraphs 1 through 40.

41. Randazzo engaged in an intentional plan, scheme and course of conduct for the purpose of: (1) deceiving Triton; and (2) causing it, under false pretenses, to buy securities in CVH Florida. In furtherance of this fraudulent scheme, Randazzo took the actions set forth herein.

42. Randazzo (1) employed manipulative and deceptive devices, schemes, artifices, plans and acts; (2) made each of the false or misleading Statements, each of which was material to Triton because the Statements conveyed the impression to Lawrence and Triton that Triton would be investing in a unique business opportunity in an already operational business with high growth prospects that already had a meaningful outside valuation; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Triton, all for the purpose of inducing Triton to buy securities in CVH Florida. The conduct of Randazzo operated to defraud Triton, as a purchaser of securities, in violation of Section 10(b) of the Exchange Act and Rule 10b-5. Randazzo is responsible for the fraud as a primary participant in the wrongful and illegal conduct alleged herein.

43. Randazzo directly, by the use, means or instrumentalities of interstate commerce or of the mails, engaged and participated in a continuous course of conduct during the Time Period to misrepresent material facts to Triton.

44. As set forth in paragraphs 27, 30-33, Randazzo acted with scienter in that he had actual knowledge of the falsity or misleading nature of each of the material Statements, or acted

with reckless disregard of the veracity of each such Statement, in that he deliberately refrained from taking reasonable and necessary steps to discover whether the Statements were false or misleading, and failed to ascertain and to disclose material facts to Triton that were available to him. Randazzo's material and false or misleading Statements were done knowingly or recklessly and with the specific intent and effect of inducing Triton to acquiring a 30% membership interest in CVH Florida.

45. In transferring $2,963,133.44 to the CVH BoA Account on August 3, 2015 to acquire a 30% interest in CVH Florida, Triton justifiably and reasonably relied on Randazzo's conduct, including his (1) employment of manipulative and deceptive devices, schemes, artifices, plans and acts and (2) the materially false or misleading Statements which operated as a fraud and deceit upon Triton.

46. As a result of the dissemination of the materially false or misleading Statements, Triton acquired a 30% interest in CVH Florida, which had an actual value far less than what was represented by Randazzo to Lawrence.

47. When Randazzo made or caused the material false or misleading Statements to Lawrence during the Time Period, Triton did not know or possess any information regarding their falsity or misleading aspect, and thus, believed the statements and representations to be true and correct. If Triton had known the truth regarding the subject matter of the Statements, Triton would not have purchased or otherwise acquired a 30% interest in CVH Florida.

48. Based on the foregoing, Randazzo violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49. As a direct and proximate result of Randazzo's wrongful conduct, Triton suffered damages in connection with its purchases of a 30% interest in CVH Florida.

## Count 2
### Fraudulent Misrepresentation against Randazzo

50. Triton adopts and incorporates paragraphs 1 through 40.

51. As set forth in paragraph 23, Randazzo made the Statements to Lawrence during the Time Period, which are summarized below:

   a. CVH Florida was operating as a virtual healthcare company;

   b. CVH Florida already had ongoing business operation and opportunities with insurance carriers and healthcare providers in the virtual healthcare field;

   c. Triton's monies would be utilized to fund day-to-day operations of the virtual healthcare business;

   d. CVH Florida had immediate revenue generation opportunities and

   e. Randazzo had already received an offer from an undisclosed third-party to acquire CVH Florida for $50 million.

52. Each of the Statements was material to Triton because it conveyed the impression that Triton would be investing in a unique business opportunity in an already operational business with exciting growth prospects that already had a meaningful valuation.

53. As set forth in paragraphs 27, 30-33, Randazzo knew that all of the Statements were false at the time they were made.

54. Randazzo made the knowingly false and material Statements to Lawrence with the intent to induce Triton to transfer $2,963,133.44 to the CVH BoA Account on August 3, 2015. Absent Randazzo making the Statements or in fact disclosing the true status and financial viability of CVH Florida during the Time Period or what Defendants actually intended to do with Triton's funds, Triton would never have made such transfer of funds.

55. As a result of Triton's justifiable reliance on the Statements made by Randazzo to Lawrence during the Time Period, Triton suffered damages.

## Count 3
### Civil Conspiracy against Randazzo and Turner

56. Triton adopts and incorporates paragraphs 1 through 40.

57. This is a claim for conspiracy.

58. As set forth in paragraphs 23, 27, 30-33, Randazzo made knowingly false material statements to Lawrence during the Time Period to induce Triton to transfer $2,963,133.44 to the CVH BoA Account on August 3, 2015 to acquire a purported 30% interest in CVH Florida.

59. Randazzo and Turner agreed that Randazzo would make such knowingly false material statements to Lawrence with the intent to obtain Triton's monies (the "Conspiracy").

60. Both Defendants committed overt acts to further the Conspiracy:

    a. Randazzo made the knowingly false and material Statements to Lawrence;

    b. Both Turner and Randazzo sent e-mails to Baker during the Time Period to facilitate the transfer of monies by Triton on August, 3, 2015 and

    c. Turner formed CVH Florida on July 16, 2015 and established the CVH BoA Account.

61. Triton suffered damages as a result of the Defendant's Conspiracy.

## Count 4
### Unjust Enrichment against Randazzo and Turner

62. Triton adopts and incorporates paragraphs 1 through 40.

63. This is a claim for unjust enrichment and is pled in the alternative to Triton's legal claims.

64. Triton lacks an adequate remedy at law.

65. Triton conferred a benefit upon Randazzo and Turner in transferring $2,963,133.44 to the CVH BoA Account on August 3, 2015.

66. To the extent the CVH BoA Account was in fact opened in the name of CVH Florida, the corporate form of CVH Florida should be disregarded and the transfer of $2,963,133.44 to the CVH BoA Account on August 3, 2015 should be treated as a benefit directly conferred upon Defendants because:

   a. CVH had no independent employees or managers and Defendants dominated and controlled CVH Florida that its independence was in fact non-existent and Defendants were in fact the alter egos of CVH Florida;

   b. Defendants formed CVH Florida during the Time Period for the improper purpose to effectuate the defrauding of Triton and

   c. Triton suffered damages as a result of the Defendants' improper use of CVH Florida's corporate form.

67. Defendants have appreciated, accepted and retained the benefit of the $2,963,133.44 transferred by Triton on August 3, 2015.

68. It would be inequitable for Defendants to retain the benefit of the $2,963,133.44 transferred by Triton on August 3, 2015 without paying the value thereof.

### Count 5
### Negligent Misrepresentation against Randazzo

69. Triton adopts and incorporates paragraphs 1 through 40.

70. As set forth in paragraph 23, Randazzo made the Statements to Lawrence during the Time Period, which are summarized below:

   a. CVH Florida was operating as a virtual healthcare company;

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, FL 33134 • (305) 377-0086

    b. CVH Florida already had ongoing business operation and opportunities with insurance carriers and healthcare providers in the virtual healthcare field;

    c. Triton's monies would be utilized to fund day-to-day operations of the virtual healthcare business;

    d. CVH Florida had immediate revenue generation opportunities and

    e. Randazzo had already received an offer from an undisclosed third-party to acquire CVH Florida for $50 million.

71. Each of the Statements was material to Triton because they conveyed the impression that Triton would be investing in a unique business opportunity in an already operational business with exciting growth prospects that already had a meaningful valuation.

72. Randazzo made each of the Statements to Lawrence without knowledge of its truth or falsity, or should have known that each of the Statements was false at the time they were made had he undertaken a cursory review of CVH's then present business activities, its immediate business development and revenue prospects and whether he in fact received an offer from an undisclosed third-party to acquire CVH Florida for $50 million.

73. Randazzo made the negligently false and material Statements to Lawrence with the intent to induce Triton to transfer $2,963,133.44 to the CVH BoA Account on August 3, 2015 to acquire a purported 30% interest in CVH Florida. Absent Randazzo making the Statements or in fact disclosing the true status and financial viability of CVH Florida during the Time Period or what Defendants actually intended to do with Triton's funds, Triton would never have made such transfer of funds.

74. As a result of Triton's justifiable reliance on the Statements made by Randazzo to Lawrence during the Time Period, Triton suffered damages.

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, FL 33134 • (305) 377-0086

Prayer for Relief

WHEREFORE, Triton requests that this Court award the following relief:

A. With respect to Count 1, (i) enter judgment in favor of Triton and against Randazzo and (ii) rescinding Triton's acquisition of a 30% interest in CVH Florida by requiring Randazzo to provide Triton $2,963,133.44 in exchange for Triton's 30% interest in such entity or (iii) to the extent the Court determines rescission is not appropriate, award compensatory damages in an amount to be determined at trial;

B. With respect to Count 2, (i) enter judgment in favor of Triton and against Randazzo and (ii) award compensatory damages in an amount to be determined at trial;

C. With respect to Count 3, (i) enter judgment in favor of Triton and against Defendants and (ii) award compensatory damages in an amount to be determined at trial;

D. With respect to Count 4, (i) enter judgment in favor of Triton and against Defendants and (ii) award compensatory damages in an amount to be determined at trial;

E. With respect to Count 5, (i) enter judgment in favor of Triton and against Randazzo and (ii) award compensatory damages in an amount to be determined at trial;

F. With respect to Counts 1 through 3, awarding Triton punitive damages;

G. With respect to all Counts, awarding Triton's out of pocket costs incurred in the prosecution of this action;

H. With respect to all Counts, awarding pre-judgment interest and post-judgment interest to the extent allowed by applicable statute and

I. Awarding Triton such other and further relief as the Court deems just and proper.

Dated: October 19, 2018          Respectfully submitted,

*/s/ Paul D. Turner*
Paul D. Turner (113743)
pturner@pbyalaw.com
Jonathan Feldman (12682)
jfeldman@pbyalaw.com
PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.

200 South Andrews Avenue, Suite 600
Fort Lauderdale, FL 33301
T: (954) 566-7117 / F: (954) 566-7115
*Attorneys for Plaintiff*

### Certificate of Service

I certify that on Octobter19, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that I served counsel of record or *pro se* parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Paul Turner*
Paul D. Turner (113743)

20

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, Suite 200, Coral Gables, FL 33134 • (305) 377-0086