UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:18-cv-61469-BB

TRITON II, LLC

    Plaintiff,

v.

JOHN RANDAZZO and CAPRICE TURNER,

    Defendants.
_____

## TRITON II, LLC'S RESPONSE IN OPPOSITION
## TO JOHN RANDAZZO'S MOTION TO DISMISS

Triton II, LLC files this response in opposition to Defendant John Randazzo's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice [ECF No. 50], and states the following in support:

### I.      Summary of the Argument

On October 10, 2018, the Court entered its Omnibus Order on Motions to Dismiss and Lift Stay. Of relevance here, the Court ruled: (a) Triton failed to properly allege the requisite elements of its securities fraud claim; (b) for similar reasons, Triton failed to properly allege its claim for common law fraud and negligent misrepresentation; (c) Triton failed to allege an underlying tort to support its civil conspiracy claim; and (d) Triton failed to allege a claim for unjust enrichment.

In response to the Court's Order, Triton filed its First Amended Complaint. The amended complaint addresses each of the issues raised in the Court's Order. The pleading sets forth the requisite factual allegations to support claims for securities fraud, common law fraud and negligent misrepresentation against Randazzo. The conspiracy claim outlines the conspiratorial objective, the Defendants' agreement to achieve that objective, the underlying tort committed and the overt acts by each Defendant. The unjust enrichment claim in turn outlines the elements of the claim and the basis for this claim to be pursued directly by Triton against the Defendants. Triton elected not to pursue its breach of fiduciary duty and aiding and abetting claims. At its core, this is a fraud case and Triton will proceed on that basis.

1

Randazzo's new motion to dismiss should be denied. *First*, as a matter of procedure, Randazzo's new frontline arguments could have been raised in his initial motion to dismiss. He elected not to do so, and thus, these arguments are now waived for present purposes. *Fed. R. Civ. P.* 12(g)(2). *Second*, as a matter of substance, Randazzo's arguments also lack merit. There is nothing inconsistent in Triton's pleading relative to its initial pleading and Randazzo's argument on this point is replete with half-truths or outright falsehoods. Randazzo's request that the Court take judicial notice or otherwise consider the Operating Agreement in determining the sufficiency of Triton's claims is a ruse. Never has Triton relied upon or asserted in a filing before this Court that the Operating Agreement is legitimate, and in any event, even if the Court did consider the Operating Agreement, Triton's misrepresentation based claims still survive.

As for Randazzo's statute of limitations argument, aside from it being untimely, it is an improper factual argument. Finally, Randazzo's remaining arguments should be rejected. He cannot credibly claim that Triton fails to allege the requisite elements of the asserted claims. Instead, his argument on this point is an exercise in deconstructionism in which he disassembles the allegations contained in the amended complaint and then explains why a particular allegation is insufficient in of itself. *See Silva v. U.S. AG*, 448 F.3d 1229, 1247-48 (11th Cir. 2006) (Carnes, J. dissenting). Randazzo's indispensable party argument fails: rescission is an appropriate remedy in this action and does not require CVH Florida to be joined as a party. .

Bottom-line, Triton gave nearly $3 million in August 2015 to Randazzo under the pretense it would be used for a particular business that never existed. Randazzo does not even attempt to deny this nor can he based on his arguments. His motion should be rejected and this action move forward so that the full extent of his fraud and his step-daughter's participation can be exposed.

## II.     Response in Opposition

### A.  Applicable standard

The Court articulated the applicable legal standard relating to Triton's claims in its October 10, 2018 Order, and it is addressed below. However, Triton does outline here the governing legal standard relating to consideration of documents outside of the pleadings. A "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed" in that authenticity is not challenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

2

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, 2nd Floor, Coral Gables, FL 33134 • (305) 377-0086

### B. Randazzo knowingly and falsely characterizes Triton's pleadings

Throughout his motion to dismiss, Randazzo recklessly and falsely characterizes Triton's pleadings. This false narratives begins immediately, in a section titled "Issues Before Court." In that section, Randazzo states:

> Triton's attempts to introduce new "facts" in its amending [sic] pleading that contradict or are inconsistent with Triton's own previous filings with the Court. For instance, Triton's original securities and misrepresentation claims in its complaint, and verified in its failed TRO motion , were predicated on (1) the supposed concealment of the fact that Caprice Turner ("Turner") would be in charge of CVH and that Triton would not have invested had it known this fact [DE 1 ¶ 20], (2) CVH would only be used to "provide healthcare services to the public" [Id. ¶1], and (3) that neither Turner nor Randazzo would be paid salaries to run the company. [Id. ¶26]. Now none of these allegations form Triton's *new* securities or misrepresentation claims. See [DE 46 ¶22, ¶26]. Triton does not offer any explanation why it seemingly abandoned these factual allegations.

This argument is dubious. Parties do not set forth in a pleading an *explanation* as to why there is an amendment to a prior pleading. Rather, parties are required to set forth *a short and plain statement* as to jurisdiction, the claim and requested relief. *See Fed. R. Civ. P.* 8(a).

Regardless, this argument by Randazzo is also false. As a general proposition, Triton's claims in its initial complaint were predicated on far more than what Randazzo states above. Triton alleged a series of representations by Randazzo regarding CVH Florida and that this company was supposed to be a virtual healthcare company similar to a prior aborted venture called CVH NC. [ECF No. 1 at ¶¶15-20, 24, 25]. Those representations were all false. Moreover, a review of the particular paragraphs of the initial complaint that Randazzo cites to reveals his misdirection. For example, paragraph 1 of the initial complaint states:

> This is an action over Triton II's missing $2,963,133.44 that was wired to bank accounts under the control of Randazzo and Turner for the sole purpose of acquiring 30% of the membership interests in Comprehensive Virtual Healthcare, LLC ("CVH Florida"), a Delaware company based in Florida that was purportedly created to provide healthcare services to the public.

It is incomprehensible what point Randazzo is attempting to score when he argues that Triton initially alleged that "CVH would only be used to 'provide healthcare services to the public'" and is now somehow being inconsistent or contradictory in its amended complaint. Triton still maintains in its amended complaint that it invested in a company under the false pretense and that

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, 2nd Floor, Coral Gables, FL 33134 • (305) 377-0086

this entity was a virtual healthcare business when in fact it was just a vehicle created by the Defendants to defraud Triton. There is no inconsistency or contradiction.

> Paragraph 20 of the initial complaint alleges:
>
> CVH Florida was formed on July 16, 2015. The business address for CVH Florida was Randazzo's personal residence. The person authorized to manage the affairs of CVH Florida was Turner. Unbeknownst to Lawrence and Triton II, Randazzo put Turner in charge of CVH Florida even though she had no credible experience running a company, let alone a healthcare company. Randazzo and Turner intentionally concealed this information from Lawrence and Triton II. Lawrence and Triton II would never have invested in CVH Florida if this information had not been concealed from him.

Nothing in the amended complaint contradicts or is inconsistent with this prior allegation. Specifically, paragraph 29(i) of the amended complaint alleges the following:

> Subsequent events serve as circumstantial proof that all the Statements were false at the time Randazzo made them to Lawrence, that Randazzo had the required scienter in that he knew of the falsity of each such Statement at the time they were made or recklessly disregarded it, and that Randazzo and Turner formed CVH Florida for the improper purpose to defraud Triton: . . . i. Turner had no experience (i) in the healthcare industry generally, or the virtual healthcare industry specifically or (ii) C-Suite experience.

The only change here is that Triton did not also include in its amended complaint an allegation that had Randazzo revealed Turner's purported role in CVH Florida, it would not have invested. For simple reason: the actionable fraud here is now focused on actual statements and conduct and not concealment. Moreover, adding or omitting this particular concealment does not do much for purposes of the amended pleading; it just piles on all the other bases for which Triton alleges it would not have invested in CVH Florida had Randazzo told the truth. Amd. Comp. ¶¶ 22, 24-27, 33. But if Randazzo cares to ask in discovery whether Triton would have invested had Lawrence disclosed Turner's role, Randazzo can rest assure the answer is "NO." In any event, there is no inconsistency or contradiction between the two pleadings on this point.

Finally, the relevant portion of paragraph 26 of the initial pleading states:

> After gaining control of Triton II's monies, Defendants misappropriated them by (1) paying themselves salaries and personal expenses . . . .

In his prior motion, Randazzo pointed to CVH Florida's payment of salaries and other improper payments in support of his argument that Triton had no standing to contest such payments, and instead, such claim was derivative and belonged to CVH Florida. *See* [ECF No. 24 at p.11] ("In

4

the present matter, Triton has neither alleged direct harm nor special injury to establish it has standing to bring its claims as direct actions. First, Triton's allegations of harm are solely that Randazzo paid salaries, expenses, and invested in startups that were purportedly "unauthorized." [DE 1 ¶70].").  To make clear that Triton is pursuing direct claims, the sole allegations relating to transfers to Turner are now found in paragraph 30 through 32.  Triton alleges Randazzo had the requisite scienter at the time he made several fraudulent statements to Lawrence in July 2015 in part because subsequent uses of Triton's monies show that they were never used for the purposes Randazzo represented they would be used for.  There is no contradiction or inconsistency.

The reality is this:  Randazzo successfully argued to the Court that the earlier allegations found in the initial complaint lacked the requisite specificity for Triton to sue him.  Now faced with an amended complaint that cures these pleading deficiencies, Randazzo takes the intellectually dishonest position that the detailed allegations against him are now contradictory and inconsistent.  But the purported "new facts" found in the amended complaint are there for one reason: Randazzo demanded them.  These allegations (i) allege in detail the fraudulent statements made by Randazzo, show how these statements were false and factually support the requisite scienter needed and (ii) pursue only direct claims on behalf of Triton.  None of these "new facts" are contradictory or inconsistent with the prior pleading.

**C.  At this procedural stage Randazzo waived the right to assert new arguments**

As outlined in the Court's October 10, 2018 Order, Triton initially sued Randazzo for, among other things, securities fraud, fraudulent misrepresentation, negligent misrepresentation and conspiracy.  The basic operative facts in the initial pleading centered around two entities called CVH NC and CVH Florida and Randazzo's misrepresentations to Triton's decision-maker, Lawrence, regarding CVH Florida in the summer of 2015.  *See* [ECF No. 1 at ¶¶ 15-24].  Additionally, shortly after filing the complaint, Triton filed its motion for preliminary injunction, which was denied by the Court.  *See* [ECF Nos. 6 & 11].  Attached to that motion was a copy of a document called "Operating Agreement."  It is uncontroverted that at the time Randazzo filed his first motion to dismiss, the preliminary injunction had already been filed and denied by the Court.

Randazzo now argues that the Court should dismiss the claims against him based upon the statute of limitations and various theories relating to the applicability of the Operating Agreement.  These arguments should be rejected. Rule 12(g)(2) provides that "[e]xcept as provided in Rule

12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Subsections (h)(2) in turn provides that a party may raise failure to state a claim upon which relief can be granted, but this must be raised after the pleadings are closed in the form of a motion for judgment on the pleadings. It is undisputed that the pleading stage in this case is not closed. Subsection (h)(3) relates to subject matter jurisdiction and is inapplicable here.

Based on the interplay between Rule 12(g)(2) and (h)(2), Randazzo's newly raised statute of limitations argument is improper: Randazzo could have and should have raised it in his initial motion to dismiss. A review of the initial complaint mandates as much. That pleading detailed a series of representations made by Randazzo to Lawrence in the summer of 2015 relating to the two entities and Triton's transfer of monies in August of 2015 to purportedly acquire a 30% interest in CVH Florida, an alleged virtual healthcare company. The Court's Order required that Triton explain in detail the particular representations relating to CVH Florida, when they were made, how they were false and the requisite scienter on the part of Randazzo. The amended complaint now addresses each of those points. What the amended complaint did not do is add a new theory of liability nor did it change the general timeline relating to Randazzo's fraud, *i.e.*, Randazzo's misrepresentations all occurred prior to August 3, 2015. As such, Randazzo's attempt to now assert a statute of limitations argument is procedurally improper and should be rejected.

Similarly, Randazzo waived his contract based arguments as to the Operating Agreement. Putting aside his narrative surrounding the document, Randazzo could have raised his argument on this issue in his first motion to dismiss. He elected not do so and it is now waived at this stage.

**D. Randazzo's contract based argument is without merit**

Aside from the untimeliness of his contract based argument, it should be rejected substantively. Randazzo argues that Triton's claims are barred because of the written terms of the Operating Agreement. To consider this argument, the Court must accept one of the two bases that Randazzo provides: (1) Triton substantively incorporated by reference the document or (2) Triton affirmatively relied upon the document in its preliminary injunction motion without disputing the veracity of the document. *See* Motion at p. 9 ("There are two bases for the Court to consider the operating agreement in ruling . . ..").  Neither argument has merit.

6

*First*, the Operating Agreement is not central to Triton's claims in this case.  Randazzo correctly points out that in several paragraphs, Triton did allege that it transferred monies to acquire a purported 30% interest in CVH Florida. But being fraudulently induced to acquire a purported 30% interest in a company versus being provided with and then executing an agreed upon Operating Agreement relating to that company are two distinct and different things.  Triton alleges the first in its amended complaint; Triton does not allege the second, denies it ever occurred in any event and the proper place for that dispute to be resolved, if at all, is in discovery.  And, yes, the amended complaint alleges that in the summer of 2018, Lawrence was provided a document— the Operating Agreement— in which in one particular section of the document states that Randazzo and Turner were the supposed 70% owners in CVH Florida in exchange for $7 compared to Triton having to pay $3 million to acquire its minority 30% interest.  Amd. Comp. ¶25.  There is no mystery on this point.  Nonetheless, Randazzo does not explain how a specific section of the Operating Agreement relating to the purported split of membership interests in CVH Florida — which supports Triton's allegation that Defendants never had any material capital at risk in this venture— now triggers other sections of the document in this litigation.  It is a bridge too far, and anyway, the authenticity of the Operating Agreement provided by Turner in 2018 is disputed.  On that latter point, Randazzo does not explain the requisite paper trail for the document, *e.g.*, when was it created and presented to Lawrence and when Randazzo allegedly obtained Lawrence's signature to the complete document.

*Second*, Randazzo's statement that the Court can consider the Operating Agreement because Triton "affirmatively relied and filed the operating agreement in its TRO motion without ever questioning or disputing the veracity of the document" is without merit.  Triton attached the Operating Agreement provided to it by Turner in the summer of 2018 to the preliminary injunction motion for one straightforward reason: a single page in that document revealed that the Defendants purportedly paid a paltry $7 for a 70% stake in CVH Florida while Triton paid nearly $3 million for a 30% minority interest in that same company.  [ECF No. 4 at p. 4] ("Notwithstanding the fact that Randazzo and Turner contributed only a combined total of $7.00, they were the other 70% members in CVH Florida.").  No other section of the document was referenced or relied upon in that filing and Triton does not cite to any authority that required Triton to affirmatively disavow the veracity of the document out of the gate in its preliminary injunction motion.  It is only now

7

that Randazzo wishes to rely upon the Operating Agreement to support a substantive defense is Triton compelled to outline its dispute regarding the veracity of the document.

But even if the Court could accept one of the two bases presented by Randazzo for the Court to consider the Operating Agreement, all Randazzo relies upon in that document is a section titled: Article 3 (Business of Company). Motion at p.11. That section lays out that "[t]he purposes of the Company **shall be to**: (a) provide technology and related support and services to assist providers in rendering mental health and other professional services in rendering such services through electronic means [and] (b) conduct business for any lawful purpose permitted under the Act . . .. *See* [ECF No. 4, Exhibit A at Article 3] (emphasis added).

At this point, it is clear that the first delineated purpose of the company —operating a virtual healthcare company—was never done. The amended complaint alleges as much and Randazzo concedes the same by virtue of his sole reliance on clause (b) of the Operating Agreement and ignoring the plain language found in clause (a). Regardless, the problem with Randazzo's contract argument is two-fold. His first problem is that there is no contradiction between Randazzo's earlier fraudulent statements and the language of the Operating Agreement. Randazzo represented to Lawrence that CVH Florida would operate as a virtual healthcare company. Clause (a) of the Operating Agreement states the same and there is no inconsistency between the representation and the document.

For Randazzo to get around this specific contract language, he must then argue that clause (a) is meaningless. But that leads to his second problem. Randazzo's interpretation of clause (b) of the Operating Agreement, violates the fundamental precepts of contract construction. Under Florida contract principles, "[w]hen a court construes a contract, it must look at the contract as a whole and give meaning to the parties' intentions as manifested in the contract's language." *TRG Columbus Dev. Venture, Ltd. v. Sifontes*, 163 So. 3d 548, 552 (Fla. 3d DCA 2015) (internal citations omitted). "Additionally, a court may not interpret a contract so as to render a portion of its language meaningless or useless." *Id.* Finally, "it is a general principle of contract interpretation that a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject." *Kel Homes, LLC v. Burris*, 933 So. 2d 699, 703 (Fla. 2d DCA 2006).

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, 2nd Floor, Coral Gables, FL 33134 • (305) 377-0086

Randazzo's interpretation of the Operating Agreement violates each of these principles. Randazzo's isolation, and then broad interpretation of, clause (b), *i.e.*, CVH Florida can do more or less whatever it wants— regardless of the misrepresentations made by Randazzo to Triton to get it to transfer almost $3 million—subsumes in its entirety clause (a) and renders such clause superfluous. Put another way, Randazzo argues that he could have bought $3 million worth of lottery tickets with Triton's money because clause (b) allowed him to do so notwithstanding his earlier oral representations regarding CVH Florida and clause (a). Randazzo's interpretation is unreasonable and improper. Moreover, clause (a) is specific as to the purported business purpose of CVH Florida relative to the general statement in clause (b), and thus, clause (a) should be given primacy. And last, the amended complaint alleges that the purpose of CVH Florida was *unlawful*, to wit: it was created by the Defendants to assist in their defrauding Triton. Amd. Comp. ¶30. Thus, clause (b) was not complied with in any event.

### E. Randazzo's statute of limitations argument is factual in nature

As outlined above, Randazzo's statute of limitations argument is not properly raised in his new motion to dismiss. Additionally, Randazzo's argument on this point should also be rejected because any statute of limitations defense can only be determined at summary judgment or trial.

In the context of securities fraud claims, the statute of limitations is the earlier of (i) 2 years after discovery of the facts constituting the violation of (ii) 5 years after such violation. 28 U.S.C. § 1658(b)(1). As to the former prong, the Supreme Court held that the term "discovery" means *actual* discovery of certain facts, but also facts that a reasonably diligent plaintiff would have discovered. *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1795 (2010). The Court rejected, however, that period begins to run upon "inquiry notice"— that is, the point when the plaintiff has "a quantum of information sufficiently suggestive of wrongdoing that he should conduct a further inquiry. *Id.* at 1798. Instead, such inquiry notice "may be useful to the extent [it] identif[ies] a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating. *Id.*

A motion to dismiss on statute of limitations is only appropriate if it is apparent from the face of the complaint that the claim is time-barred. *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013). Because "[a] statute of limitations bar is an affirmative defense . . . plaintiff[s] [are] not required to negate" the affirmative defense in their complaint. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

9

Applying the above authority here, the accrual date for the cause of action *only begins* at the point where Randazzo's fraud was actually discovered (the summer of 2018) or the point in time that a hypothetically reasonably diligent plaintiff would have discovered facts that it was defrauded by Randazzo. Triton is not required to plead that a reasonably diligent plaintiff would have failed to discover Randazzo's fraud in less than a year of it occurring, *i.e.*, before the summer of 2016. Thus, it is Randazzo's burden to show that it is apparent from the face of the amended complaint that Triton's claims are time-barred because a reasonably diligent plaintiff would have discovered Randazzo's fraud before the summer of 2016.

Randazzo cannot meet his burden. Randazzo speculates that a reasonably diligent plaintiff would have checked the internet to see the status of the virtual healthcare business and realized it was all a sham. Motion at p.6. The flaw in this argument is that (1) checking the internet would not be the appropriate manner to determine the status of CVH Florida, (2) checking the internet would not reveal facts that would indicate fraud on the part of Randazzo, (3) when would the reasonably diligent plaintiff have checked the internet assuming that were the proper protocol in the first instance and (4) would the information found on the internet just give rise to inquiry notice that would not trigger the limitations period. Put simply, the answers to these questions are at best, factual in nature, and not properly raised at this procedural point.[1]

Indeed, a review of Randazzo's one relevant authority— *Roaring Fork Capital SBIC, L.P. v. ATC Healthcare, Inc.*, 2011 WL 1258504 (D. Col. March 29, 2011)—reveals the failings of his argument. In that case, the plaintiff received specific public warnings regarding the company's improper accounting practices well outside the two-year limitations period. Based on these warnings, along with the plaintiff's own allegations regarding red flags relating to these accounting processes in earlier years, the court found that the securities fraud claim was time barred because

---

[1] Randazzo also asserts in the contract argument section of his motion that receipt of the Operating Agreement supports his statute of limitations defense. Motion at p. 12. This is false: the amended complaint does not allege that Lawrence received the Operating Agreement in the summer of 2015 and Randazzo's interpretation of the Operating Agreement is unsupportable.

reasonable diligence by a hypothetical plaintiff upon receipt of these warnings would have revealed defendants' fraud.  Nothing of the sort exists here.[2]

**F.  Triton's fraud based claims are alleged with the requisite specificity**

In compliance with the Court's October 10, 2018 Order, Triton set forth the requisite factual basis for its securities fraud and fraudulent and negligent misrepresentation claims against Randazzo.  His arguments on these claims should be rejected as outlined below.

**1.  The amended complaint**

Paragraphs 20 through 22 of the amended complaint set forth five specific oral representations made by Randazzo to Lawrence during the period of July 12 through July 31, 2015 ("Time Period"):

> (a) CVH Florida was operating as a virtual healthcare company to enable patients to connect with health care providers and receive primary and specialty care ("Statement 1");
>
> (b) Although CVH Florida was a start-up, it already had ongoing business operations and exploitable opportunities with insurance carriers, including Blue Cross and Blue Shield of Florida, and healthcare providers in the virtual healthcare field based upon Randazzo's relationship with such parties ("Statement 2");
>
> (c) Triton's monies would be used to fund day-to-day business operations and the growth of the operating virtual healthcare business of CVH Florida ("Statement 3");
>
> (d) Because CVH Florida had ongoing business operations and opportunities with insurance carriers and healthcare providers, CVH Florida had immediate revenue generation opportunities ("Statement 4") and
>
> (e) Randazzo had already received an offer from an undisclosed third-party to acquire CVH Florida for $50 million which would yield a valuation of a 30% interest in CVH Florida of $15 million ("Statement 5");

The amended complaint alleges how each of these statements by Randazzo was material to Triton in that they conveyed to Lawrence that Triton would be investing in a unique business opportunity of an operating business with high growth prospects and that it already had a

---

[2] Randazzo's claim that Triton's actual discovery of the fraud is "conclusory" is without merit. Once again, Randazzo mischaracterizes Triton's pleading.  Paragraphs 34 through 39 of the amended complaint allege in specific detail how Triton discovered the fraud.

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, 2nd Floor, Coral Gables, FL 33134 • (305) 377-0086

meaningful outside valuation. Amd. Comp. ¶23.  The amended complaint alleges that Triton relied upon these particular representations when it transferred its funds on August 3, 2015, that Randazzo made such false statements to induce Triton to transfer such funds and absent those statements being made, Triton would never have made such transfer. *Id.* at ¶¶24, 33.

Finally, the Amended Complaint alleges that each of these statements were false at the time they were made, that Randazzo— by virtue of his role— had knowledge of their falsity at such time and how Triton was misled by each such statement:

> (a) As to Statement 1, such statement was false and misleading at the time it was made because CVH Florida was not operating as a virtual technology company during the Time Period and Randazzo, as the promoter of the transaction and as a purported member in CVH Florida, was aware of such fact or recklessly disregarded it.
>
> (b) As to Statement 2, such statement was false and misleading at the time it was made because neither Randazzo nor CVH Florida had ongoing business opportunities or relationships with insurance carriers or healthcare providers in the virtual healthcare field during the Time Period and Randazzo, as the promoter of the transaction and as a purported member in CVH Florida, was aware of such fact or recklessly disregarded it;
>
> (c) As to Statement 3, such statement was false and misleading at the time it was made because CVH Florida had no existing day-to-day operations during the Time Period and Randazzo, as the promoter of the transaction and as a purported member in CVH Florida, was aware of such fact or recklessly disregarded it;
>
> (d) As to Statement 4, such statement was false and misleading at the time it was made because CVH Florida had no immediate revenue generation opportunities during the Time Period and Randazzo, as the promoter of the transaction and as a purported member of CVH Florida, was aware of such fact or recklessly disregarded it, and
>
> (e) As to Statement 5, such statement was false and misleading at the time it was made because Randazzo never received any preliminary expression of interest from anyone to acquire CVH Florida for "$50 million" during the Time Period and Randazzo was aware of such fact or recklessly disregarded it.

*Id.* at ¶¶26, 27.

Beyond that, to further establish Randazzo's knowledge that his statements were false at the time they were made to Lawrence, Triton also alleges a series of circumstantial facts to portray what occurred in the time period before, during and after Triton transferred its monies on August 3, 2015: (a) CVH Florida never at any point operated as a healthcare business; (b) a little over a

year after its formation, CVH Florida was administratively dissolved; (c) CVH Florida never established office space after its formation to operate, but instead, its principal place of business was always Randazzo's home address; (d) CVH Florida never generated any revenues or profits; (e) CVH Florida never entered into any agreement with healthcare providers or insurers in the virtual healthcare field; (f) other than Triton's monies transferred on August 3, 2015, neither Randazzo nor Turner ever made any material capital contribution to CVH Florida at formation of the entity, at the time Triton wired its funds on August 3, 2015 or thereafter; (g) as of the commencement of this litigation, CVH Florida never filed any federal income tax return for 2015, 2016 or 2017; (h) CVH Florida never had any employees that operated a virtual healthcare business; (i) Turner had no experience (y) in the healthcare industry generally, or the virtual healthcare industry specifically or (z) C-Suite experience and (j) the actual use of Triton's monies in the months after August 2015 directly contradict Randazzo's representations to Lawrence as to how such funds would be used. *Id.* at ¶¶29-32.

### 2. Triton's securities fraud claim is proper

The Court's October 10, 2018 laid out the requisite standard to state a claim for securities fraud:

> In order to state a claim for securities fraud, a plaintiff must allege "1) a misstatement or omission, 2) of a material fact, 3) made with scienter, 4) on which plaintiff relied, 5) that proximately caused his injury." . . . In pleading such a claim, the PLSRA further requires that plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." . . . In the Eleventh Circuit, the required state of mind is severe recklessness.
>
> ***
>
> In determining whether the requisite state of mind is adequately pled, "the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1239 (11th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007)).

Based on these principles, the Court found that Triton failed to properly allege the elements of its securities fraud claim. As to scienter, the Court in its Order found that Triton's earlier allegations were insufficient to allege the requisite scienter. [ECF No. 44 at pp. 8-9]. In particular, the Court stated that it was unclear from the initial complaint's allegations if Lawrence was just

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, 2nd Floor, Coral Gables, FL 33134 • (305) 377-0086

relying upon earlier representations regarding CVH NC in making a later investment in CVH Florida and that allegations relating to Turner's involvement and the location of the purported business were not compelling enough to satisfy the his knowledge. Finally, the Court noted Randazzo's membership interest in CVH Florida.

As outlined above, each of these elements is now satisfied. The complaint alleges the particular statements, who made them (Randazzo), who they were made to (Lawrence) when they were made (July 12 through July 31, 2015), how they were made (orally) and where they were made (South Florida). The amended complaint also alleges with particular specificity how each of these statements was material to Triton, Triton's reliance on these statements and how the statements made by Randazzo were false. Although not necessary, the only modification to the above is Triton will amend the complaint to extend the Time Period for two more days —to August 2, 2015— and to state the particular manner in which the oral misrepresentations were made by Randazzo to Lawrence.[3] Since the date of filing of the amended complaint, Lawrence has obtained from his cell phone carrier his historical phone records from three years prior detailing the exact time and date of the phone calls he had with Randazzo regarding CVH Florida.[4]

Randazzo's scienter is now also properly alleged. The amended complaint sets forth multiple allegations of how he knew the statements were false based upon his role in the transaction and CVH Florida and what he would gain from his fraudulent conduct: millions of dollars from Triton. That Randazzo was a member in CVH Florida is of no consequence: he never made any material financial contribution to CVH Florida, and thus, had no risk of economic loss. Amd. Comp. ¶25. Additional allegations relating to CVH Florida before, during and after Triton transferred its funds on August 3, 2015 further detail Randazzo's knowledge of the falsity of his statements. Real companies with real operations, conduct their affairs in compliance with state and federal laws, have employees that are familiar with the industry the company is competing in

---

[3] *See Kahn v. Ran*, No. 08-CV-14417, 2009 U.S. Dist. LEXIS 35474, at *17-21 (E.D. Mich. Apr. 27, 2009) (holding "Plaintiffs have pled their fraud claim with sufficient particularity" where they "allege that the statement was made in early 2006, prior to their February investment"); *First Union Brokerage v. Milos*, 717 F. Supp. 1519, 1522 (S.D. Fla. 1989) (identifying the "approximate date of the alleged misstatement. . . . complied with the pleading requirements of Rule 9(b)").

[4] Triton intends to file a motion for leave to amend its operative pleading pursuant to *Fed. R. Civ. P.* 15 to include these additional facts in paragraphs 20 and 22.

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, 2nd Floor, Coral Gables, FL 33134 • (305) 377-0086

and use their funds for such purposes.  None of that occurred per the amended complaint.  Based on all of these allegations "a reasonable person would infer that there was at least a fifty-fifty chance that [Randazzo] knew about the alleged fraud (or [was] severely reckless in not knowing about it) based on its nature, duration, or amount."  *Mizzaro*, 544 F.3d at 1249; *see also Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1017 (11th Cir, 2004) (facts which individually do not give rise to strong inference of scienter may be aggregated to make the necessary showing).

In his motion to dismiss, Randazzo argues that Triton again fails to allege the requisite specificity and scienter.  Those arguments are addressed above and should be rejected.  Randazzo's sole remaining argument is that the terms of the Operating Agreement render any reliance by Triton on Randazzo's misrepresentations as a matter of law unreasonable.  Putting aside Randazzo's failure to timely assert this argument in his initial motion to dismiss per Rule 12(g)(2), the argument also fails because, as stated above, it presumes the Operating Agreement is legitimate and his interpretation of the Article 3 of that document defies general interpretive principles governing contracts.

### 3.  Triton's common law fraudulent inducement claim is proper

In its October 10, 2018 Order, the Court noted that the elements of a common law fraud claim generally are similar to a claim under 10b-5.  As explained above, Triton properly alleges each such element of its common law fraud claim in its amended complaint and Randazzo's argument on this point should be rejected.  The only remaining argument Randazzo makes as to this Count centers around Statement 5:  Randazzo represented to Lawrence that he had already received an offer from an undisclosed third-party to acquire CVH Florida for $50 million, which would yield a valuation of a 30% interest in CVH Florida of $15 million.  As to this statement, Randazzo asserts that any statement regarding future performance is only actionable if, for example, the speaker does not genuinely or reasonably believe the statement.  First, the complaint makes clear that Randazzo's statement had nothing to do with a potential later acquisition so Randazzo's argument is off the mark.  To the contrary, Randazzo's statement pertained to something that Randazzo claimed had already occurred.  Regardless, the amended complaint also alleges that Randazzo knew this statement, as well as the remaining statements, was false: Randazzo never received any such offer and his statement to Lawrence was a lie at the time it was made. Amd. Comp. ¶26.e.

#### 4.   Triton's negligent misrepresentation claim is proper

The elements of a negligent misrepresentation claim are: (1) a misrepresentation of a material fact; (2) that the defendant made the representation without knowledge as to its truth or falsity, or under circumstances in which he ought to have known of its falsity; (3) that the defendant intended that the misrepresentation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993).

Randazzo argues that Triton fails to satisfy its Rule 8(a)(2) obligations with respect to this claim. Specifically, Randazzo claims that Triton did not allege what material information was misrepresented or how Randazzo failed to exercise reasonable care. This argument should be rejected. As explained above, Triton sets forth by listing the statements made by Randazzo and how each statement was false. Moreover, the amended complaint goes far beyond alleging that Randazzo failed to exercise reasonable care. To the contrary, the amended complaint alleges he had actual knowledge that the statements were false at the time they were made. *Id.* at ¶¶26. Thus, Triton's argument should be rejected.

### G.   Triton's civil conspiracy claim is proper

To state a claim for civil conspiracy, a party must allege "(1) an agreement between two or more parties; (2) to perform an unlawful act; (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Mukamal v. GE Capital Corp. (In re Palm Beach Fin. Partners, L.P.)*, 517 B.R. 310, 343 (Bankr. S.D. Fla. 2013) (internal citations omitted). "[E]ach [co-conspirator] 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *Id.* Finally, "'an actionable conspiracy requires an actionable underlying tort or wrong.'" *Id.*

Each of these elements is set forth in Triton's amended complaint: (a) the underlying tort of fraudulent misrepresentation by Randazzo (Amd. Comp. ¶58); (b) the unlawful agreement between Randazzo and Turner to obtain under false pretenses Triton's monies (*id.* at ¶59); (c) the overt acts committed by each Defendant in furtherance of the conspiracy: (i) Randazzo made the knowingly false and material Statements to Lawrence; (ii) both Turner and Randazzo sent e-mails to Baker during the Time Period to facilitate the transfer of monies by Triton on August, 3, 2015

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, 2nd Floor, Coral Gables, FL 33134 • (305) 377-0086

and (iii) Turner formed CVH Florida on July 16, 2015 and established the CVH BoA Account (*Id.* at ¶60) and  (c) damages suffered by Triton (*id.* at ¶61).

Randazzo's arguments in response are largely the same as his other arguments.  Randazzo argues that the claim is not alleged with the requisite specificity.  This is incorrect: the amended complaint details the underlying tort, the unlawful agreed upon conspiratorial objective between the Defendants and the overt acts.  Randazzo also falsely summarizes the amended complaint.  He asserts that the amended complaint alleges that the only overt acts in furtherance of the conspiracy were the sending of emails and formation of CVH Florida.  Motion at p. 16.  That is demonstratively false as outlined above and in the claim itself.  And even if Randazzo were correct, those overt acts are still sufficient to render him liable.  *See Bridge C.A.T. Scan Associates v. Ohio–Nuclear Inc.*, 608 F.Supp. 1187, 1191 (S.D.N.Y.1985) ("That [defendant's] role in this conspiracy may have been limited or slight is of no consequence. A conspirator is liable for the acts of other members of the claimed conspiracy as if they were his own, whether he plays a minor or major role in the common scheme."); *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 971 (S.D. Tex. 2010) ("A changing cast of characters does nothing to lessen the fact of one conspiracy. Once the existence of a common scheme of conspiracy is shown, slight evidence is all that is required to connect a particular defendant with the conspiracy.").

For the first time, Randazzo's motion also raises the intercorporate conspiracy doctrine. This argument should have been raised in his initial motion to dismiss.  He did not do so and again, it is now untimely at this procedural stage.  Regardless, this argument fails.

The intercorporate conspiracy doctrine provides that "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, *when acting in the scope of their employment*, cannot conspire among themselves.  *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (emphasis added).  Here, Randazzo's argument fails.  Randazzo claims that because he is an alleged member of CVH Florida, that somehow equates to him either being an employee or agent of such company and if assuming as much, that he was wearing such agent or employee hat at the time he set into motion his unlawful conspiracy.  Nothing in the amended complaint alleges as much.  But more important, nothing in the amended complaint alleges that Randazzo was acting

17

within the scope of any employment or agency of CVH Florida.  In sum, Randazzo's reliance upon this doctrine is a misfit and attempts to inject improper factual issues.

Finally, Randazzo once again raises the issue of standing, namely, that Triton has suffered no direct damages as a result of such conspiracy.  The Court, however, already addressed this argument in its October 10, 2018 Order:

> Here, setting aside pleading deficiencies that the Court addresses in the following sections of this order, Triton's claims constitute direct injuries sustained by it. The Complaint alleges that Randazzo made false and misleading statements to Lawrence in order to procure Triton's investment in CVH Florida, which Triton otherwise would not have done. As a result, the claims premised upon such false and misleading statements involve direct injuries sustained by Triton based on the statements made to Lawrence as its principal.

[ECF No. 44 at pp. 11–12].  If the fraudulent statements outlined above all equate to a direct injury to Triton, then the unlawful agreement between Randazzo and Turner and the overt acts committed by them in furtherance of this tort is direct in nature and belongs solely to Triton.

### H. Triton alleged with the requisite specificity its claim for unjust enrichment

To state a claim for unjust enrichment, a party must allege a benefit conferred upon a defendant, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable to retain it without paying the value thereof. *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012).  Here, the complaint alleges each of these elements: (i) Triton conferred a benefit upon Randazzo and Turner in transferring $2,963,133.44 to the CVH BoA Account on August 3, 2015 (Amd. Comp. ¶65) and to the extent the transfer on such date was to an account legally held by CVH Florida, such corporate form should be disregarded under applicable Florida law (*id.* at ¶65); (ii) Defendants have appreciated, accepted and retained such benefit (id at ¶66) and under the circumstances, it is inequitable for them to retain such benefit without paying the monetary equivalent.

Randazzo's argument in response is three-fold.  Randazzo initially argues that the amended complaint alleges that the benefit was conferred upon CVH Florida, not him.  This is false. Although the defined term for the bank account utilizes the name "CVH" whether this account was in fact owned by CVH Florida is unknown to Triton.  All that is alleged is that the account was under Defendants' exclusive control.  *Id.* at 24. But whether the transfer was to CVH or Randazzo is a non-issue.  In the event CVH Florida was the legal owner of the account, the amended

PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, 2nd Floor, Coral Gables, FL 33134 • (305) 377-0086

complaint alleges that the corporate form should be disregarded under Florida law. That leads to Randazzo's remaining arguments: Triton cannot pierce the corporate veil to attain standing to sue on behalf of CVH Florida and Triton has not alleged piercing with the requisite specificity.

Both of these arguments fail. Triton is not suing to assert a claim on behalf of CVH Florida; it is suing to recover the benefit it conferred upon the Defendants. Randazzo's cited authority – *Resorts International* and *Chaul* – is thus, inapposite. In *Resorts*, the plaintiff attempted to also recover damages on behalf of its sister company when such company had no connection to the events giving rise to damages. In *Chaul*, shareholders in a sold company had no direct claim to sue a third-party for engineering a low purchase price of their shares. Instead, that claim was derivative in nature and belonged to the company. Here, Triton is pursuing its direct damages; not damages suffered by CVH Florida. Finally, Triton's piercing theory is subject to Rule 8's pleading standard. *Zhejiang Dushen Necktie Co. v. Blue Med*, Inc., 2017 U.S. Dist. LEXIS 151210, *8 (S.D. Fla. Sep. 18, 2017). Triton has satisfied this standard. The claim itself alleges that CVH Florida had no independent employees or managers and Defendants dominated and controlled CVH Florida that its independence was in fact non-existent, Defendants formed CVH Florida during the Time Period for the improper purpose to effectuate the defrauding of Triton and Triton suffered damages. Amd. Comp. ¶66. Beyond that, the general allegations, incorporated by reference, also allege the non-existence of any business operations or employees and the Defendants' fraudulent scheme. Put another way, CVH was nothing except a vehicle for Defendants to perpetrate their fraud. Thus, the elements of piercing are properly pled.

## I. Randazzo's indispensable party argument is without merit

Randazzo argues that the claims against him must be dismissed because Triton failed to join CVH Florida as an indispensable party pursuant to *Fed. R. Civ. P.* 19. The basis of this argument is that as to Count 1 of the amended complaint, Triton's prayer for relief requests:

> With respect to Count 1, (i) enter judgment in favor of Triton and against Randazzo and (ii) rescinding Triton's acquisition of a 30% interest in CVH Florida by requiring Randazzo to provide Triton $2,963,133.44 in exchange for Triton's 30% interest in such entity or (iii) to the extent the Court determines rescission is not appropriate, award compensatory damages in an amount to be determined at trial

Based on this particular request in the prayer for relief, Randazzo argues that Triton failed to allege that he was the original owner of Triton's investment in CVH Florida, and thus, there can be

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, 2nd Floor, Coral Gables, FL 33134 • (305) 377-0086

nothing to rescind.   The Court should reject this argument.   Rescission is an acceptable remedy with respect to 10b-5 claims.   *Bruschi v. Brown*, 876 F.2d 1526, 1531 (11th Cir. 1989). Additionally, rescission can be awarded against a party even though it was not the seller of the securities.   *Id.* (citing *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 687 n. 15 (11th Cir. 1983). Whether rescission is appropriate when there is no contractual privity depends on whether the fraudulent party's "participation in the buy-sell transaction is a substantial factor in causing the transaction to take place."   *Silverberg*, 710 F.2d at 687 n. 15.

Based on the above authority, Randazzo's indispensable party argument is without merit. The amended complaint is clear that Triton invested under false pretenses because of one person: Randazzo.   Thus, Triton's rescission remedy is proper because his participation in Triton's acquisition of a purported 30% interest in CVH was substantial.   Finally, if the Court determines that rescission is not appropriate, then Triton's prayer for relief requests money damages against Randazzo, which is a remedy that does not require CVH Florida's joinder.

### J.   Randazzo's motion to strike Triton's punitive damage request is without merit

Randazzo argues that Triton's punitive damage request must be stricken because Triton failed to allege that he committed intentional misconduct or gross negligence pursuant to *Fla. Stat.* § 768.72(2).   That position is without merit.   As outlined above, the amended complaint states the requisite factual allegations surrounding Randazzo's fraudulent conduct.   Such conduct on his part meets at a minimum the standard of gross negligence under § 768.72(2).   Randazzo's remaining arguments are also unavailing.   He argues that punitive damages are available in a fraud claim only if the plaintiff can demonstrate the harm was directed at the public in general.   Perhaps that is the law in New York but that is not Florida law.   Punitive damages in a fraud context are allowed without imposing any harm to the public requirement.   *First Interstate Dev. Corp. v. Ablanedo*, 511 So. 2d 536, 539 (Fla. 1987) ("punitive damages are appropriate for any tortious conduct accomplished through fraud").   Finally, Randazzo argues that punitive damages are not allowed for 10b-5 claims.   That does not, however, eliminate Triton's entitlement to punitive damages as to its common law fraud and conspiracy claims.

### III.   Conclusion

For the reasons set forth above, Triton requests the Court deny Randazzo's motion to dismiss and grant such further relief the Court deems just and proper.

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, 2nd Floor, Coral Gables, FL 33134 • (305) 377-0086

Dated:  November 19, 2018.

Respectfully submitted,

*/s/ Paul D. Turner*
Paul D. Turner (113743)
pturner@pbyalaw.com
PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
200 South Andrews Avenue, Suite 600
Fort Lauderdale, FL 33301
T: (954) 566-7117 / F: (954) 566-7115
*Attorneys for Plaintiff*


## Certificate of Service

I certify that on November 19, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that I served counsel of record or *pro se* parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Paul Turner*
Paul D. Turner (113743)

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600, Fort Lauderdale, Florida 33301 • (954) 566-7117
283 Catalonia Avenue, 2nd Floor, Coral Gables, FL 33134 • (305) 377-0086